THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RALPH D. WILLIAMSON, Defendant-Appellant.

Fourth District   No. 4—91—0637

Opinion filed February 11, 1993.

Theodore A. Gottfried, of State Appellate Defender's Office, of Springfield, and Julia M. Gentile, of Petersburg, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

After a jury trial, defendant Ralph Williamson was convicted of possession of less than one gram of a substance containing cocaine and resisting a peace officer (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b); ch. 38, par. 31—1) and was sentenced to four years of intensive probation supervision (IPS). Defendant appeals, contending the trial court erred in denying his motion to suppress physical evidence. We affirm in part, reverse in part and remand for a new trial on the charge of unlawful possession.

On August 15, 1990, at approximately 11 p.m., Officer John Kelly of the Danville police department responded to a call that a fight was

in progress in the 100 block of South Kimball. Upon his arriving at the scene, Malinda Craft (formerly Barnes) told Kelly that defendant had been creating a disturbance and was possibly armed with a "weapon of some sort," which was described as a "gun," "knife," or "something shiny."

Kelly approached defendant and requested that defendant raise his arms. Defendant, who appeared intoxicated, was uncooperative and refused to comply. Kelly repeated his request and informed defendant that he wanted to search for a weapon. Defendant again refused and Kelly attempted to force defendant to raise one of his arms. Defendant pulled away and Kelly, thinking he was about to be struck, grabbed defendant. Both parties fell to the ground and struggled; several other officers arrived and subdued defendant. After defendant had been placed in custody, a search of his person did not reveal the alleged weapon.

Kelly then spoke with several witnesses, one of whom had only been identified as "Pasley." Pasley told Kelly that defendant had earlier threatened to stab him (Pasley) with a knife. The record does not reflect whether Pasley ever saw a weapon. Kelly also spoke with Craft, who told him that defendant had arrived in a blue 1979 Chevrolet Chevette. Craft also informed Kelly that defendant had returned to his car between the time she saw him with the weapon and when the police had arrived. The car to which she referred was illegally parked in the street and was ordered towed.

Prior to the car being towed, Officer Steven Desecki of the department conducted an inventory of the car. At trial, Desecki testified that it was the policy of the department to inventory all vehicles which were to be towed. The inventorying officer was to search the vehicle and to note all items found on a tow-in report. Desecki testified that part of the search entailed the glove compartment wherein Desecki found a small, opaque prescription bottle. Desecki took the bottle out of the glove compartment, shook it, and heard a rattling noise that did not sound like pills. As the bottle was opaque, Desecki could not see the contents. Desecki opened the bottle and pulled out a razor blade, a cut-up piece of straw with a white, powdery residue which later was determined to be cocaine, and a "twisty thing." Desecki returned the items to the bottle and gave the bottle to Kelly.

Defendant was charged with possession of a controlled substance and resisting a peace officer. On May 20, 1991, defendant filed a motion to suppress the prescription bottle and its contents. The trial court, after hearing the testimony of Kelly and Desecki, denied

defendant's motion. Defendant contends, and we agree, the trial court erred in denying the motion to suppress.

On a motion to suppress evidence, defendant has the burden of establishing that the search and seizure were unreasonable. (Ill. Rev. Stat. 1989, ch. 38, par. 114—12(b); *People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898, 899.) A trial court's determination on a motion to suppress will not be overturned unless the decision of the trial court is manifestly erroneous. *People v. Thomann* (1990), 197 Ill. App. 3d 488, 496, 554 N.E.2d 748, 753; *Neal*, 109 Ill. 2d at 218, 486 N.E.2d at 899.

The State argues two justifications exist to support a search of both the vehicle and the prescription bottle contained therein: (1) the search was a valid inventory conducted pursuant to standardized procedures; and (2) Desecki had probable cause to search both the vehicle and the prescription bottle for the weapon allegedly possessed by defendant. Further, the State argues Desecki had probable cause to believe the prescription bottle contained a controlled substance.

The State first contends the search of both the vehicle and the prescription bottle was justified under an inventory rationale. Occasionally a police department's community caretaking function will require it to tow and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of traffic. When vehicles are impounded, a police department will often inventory the contents of a vehicle; such an inventory serves several important interests: (1) the protection of an owner's property while it remains in police custody; (2) the protection of the police against claims or disputes over lost or stolen property; and (3) the protection of the police from potential danger. (*South Dakota v. Opperman* (1976), 428 U.S. 364, 368-69, 49 L. Ed. 2d 1000, 1005, 96 S. Ct. 3092, 3096-97; *People v. Clark* (1976), 65 Ill. 2d 169, 174, 357 N.E.2d 798, 800.) An inventory search does not violate the constitutional prohibition against unreasonable searches if it is conducted pursuant to standardized procedures. (*Opperman*, 428 U.S. at 375-76, 49 L. Ed. 2d at 1009, 96 S. Ct. at 3100.) Inventory searches of vehicles are not limited merely to the vehicle itself, but also include closed containers within a vehicle. (*Colorado v. Bertine* (1987), 479 U.S. 367, 374-75, 93 L. Ed. 2d 739, 747-48, 107 S. Ct. 738, 742-43.) As with an inventory of the vehicle itself, however, the inventory of closed containers must be conducted pursuant to standardized police procedures. *Bertine*, 479 U.S. at 374-75, 93 L. Ed. 2d at 747-48, 107 S. Ct. at 742-43.

In *People v. Binder* (1989), 180 Ill. App. 3d 624, 536 N.E.2d 218, this court implied that written evidence of standardized police procedures or policies may be necessary, as an evidentiary matter, to demonstrate the existence and scope of standardized procedures regarding inventory searches. In *Binder*, police searched defendant's vehicle for evidence of the possession or consumption of alcohol. Defendant was arrested and his vehicle was ordered towed. At trial, an officer testified that it was the policy of the police department to inventory vehicles which were to be towed. Vehicles were not to be towed if the owner or driver were outside the vehicle or if a car were properly parked. Other testimony indicated that vehicles would be towed where the owner was arrested outside the vehicle. Although the search in *Binder* was upheld on a probable cause basis, this court, in *dictum*, noted that "producing a written directive detailing specific procedures would better reflect the type of standardized procedures which justify the inventory exception to the warrant requirement." *Binder*, 180 Ill. App. 3d at 628, 536 N.E.2d at 221.

■ Here, the evidence of standardized procedures is scant. Kelly and Desecki testified that it was department policy to inventory any vehicles which were to be towed. Further, Desecki testified it was department policy to complete a "Tow-In Report" whenever a vehicle was impounded. However, the State failed to offer any written evidence of the inventory policies or procedures of the department. No evidence was offered to demonstrate under what circumstances a vehicle is to be towed or whether closed containers should be searched as a part of a general vehicle search. Further, no evidence was presented detailing the proper scope of such a search. We decline to uphold the validity of this search on an inventory basis absent written directives or policies which outline the procedures to be followed by law enforcement officers. Consideration of a written copy of the policies and procedures of a police department will enable courts to examine the scope of the procedures and determine whether a given officer has adhered to the carefully drafted policies of his or her department. In doing so, we do not mean to impugn the integrity of these officers or of police officers in general. However, the interests of justice will best be served if courts are able to compare an officer's actions to the actual words of a carefully drafted procedure rather than the general statements often produced at trial.

Moreover, even if we found the evidence offered at trial to be sufficient to support a general inventory search of the vehicle, no evidence was presented regarding the department's policies or procedures on the inventorying of closed containers. During an inventory

search, closed containers may not be opened unless doing so is authorized by a standardized procedure. (*People v. Lear* (1991), 217 Ill. App. 3d 712, 714-15, 577 N.E.2d 826, 828; *People v. Hundley* (1992), 227 Ill. App. 3d 1056, 1062-63, 591 N.E.2d 903, 907.) Absent evidence of a departmental policy to inventory closed containers found during a general inventory search, we decline to infer such a policy from the general statements offered at the motion to suppress hearing. The State asks us to consider *United States v. Wilson* (7th Cir. 1991), 938 F.2d 785, wherein the court did not require the "magic words" "closed container" to be contained in the standardized procedures, but inferred a policy to open closed containers from other language. While there may be no requirement for "magic words," we decline to infer such a policy absent clear intent as evidenced by the express language of the standardized procedures themselves.

■ When the driver or occupant of a vehicle is arrested, the police at the scene of the arrest may search the entire passenger compartment of the car and any container therein, as a search incident to a lawful arrest. (*New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860.) *Belton* does not apply, however, where the defendant was not in the vehicle prior to the arrest, as here. (*People v. Kolody* (1990), 200 Ill. App. 3d 130, 135-36, 558 N.E.2d 589, 594.) The State maintains Desecki's search of the vehicle was valid because Desecki had probable cause to search the vehicle and prescription bottle for the weapon allegedly possessed by defendant. There is probable cause to conduct a warrantless search of an automobile when it is shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that contraband was present in the automobile. (*People v. Clark* (1982), 92 Ill. 2d 96, 100, 440 N.E.2d 869, 871; *People v. Smith* (1983), 95 Ill. 2d 412, 419, 447 N.E.2d 809, 811-12.) When officers have probable cause to search a vehicle, the scope of that search extends to any containers in the vehicle wherein there is probable cause to believe the contraband may be concealed. The scope of any such search is limited neither by the possibility that separate acts of entry or opening may be required to complete the search (*United States v. Ross* (1982), 456 U.S. 798, 820-21, 72 L. Ed. 2d 572, 591, 102 S. Ct. 2157, 2170-71; *Smith*, 95 Ill. 2d at 418, 447 N.E.2d at 811), nor by the nature of the container in which contraband is secreted; rather, it is defined by the object of the search and the places in which there is probable cause to believe it may be found. *Ross*, 456 U.S. at 824, 72 L. Ed. 2d at 593, 102 S. Ct. at 2172.

■ Facts available to the police at the time of this search fully support the existence of probable cause to search the glove compartment of the vehicle for a weapon. Testimony indicated that shortly after Kelly arrived at the scene, he was informed defendant was armed with a "weapon of some sort." Kelly then personally searched defendant for the weapon and found nothing. After defendant was placed in custody, Craft told Kelly that she had seen defendant return to his car after she had seen him with the weapon; and Pasley told Kelly that defendant had threatened to stab him. Given these facts and circumstances, the police had probable cause to believe defendant had a weapon and that the weapon might be in the vehicle.

However, the facts available to the officers at the time of the search did not give rise to probable cause to search the prescription bottle. The permissible boundaries of Desecki's search only extended to those containers in which there was probable cause to believe the weapon might be concealed. (*Ross*, 456 U.S. at 824, 72 L. Ed. 2d at 593, 102 S. Ct. at 2172.) We fail to see how what Desecki described as "a regular prescription bottle" could contain a weapon the size of a gun or a knife. Absent any evidence that the weapon was of such an extraordinarily small size that it could fit inside a prescription bottle, the facts available at the time of the search would not justify a reasonable person in believing a gun or knife could be contained therein.

The State finally maintains that Desecki had probable cause to search the prescription bottle for a controlled substance because (1) drawing upon his law enforcement experience, he was aware that prescription bottles are often used to store drugs; (2) the prescription bottle did not bear the name of defendant; and (3) when Desecki shook the bottle, the sound emanating therefrom did not sound like common prescription pills. The State argues that these factors, when considered in aggregation, amount to probable cause to search the bottle for evidence of contraband.

■ Before considering whether these factors amount to probable cause, it is necessary to determine whether Desecki's shaking of the bottle and reading the label thereon were a separate and distinct search which also must be supported by probable cause. In *Arizona v. Hicks* (1987), 480 U.S. 321, 94 L. Ed. 2d 347, 107 S. Ct. 1149, the United States Supreme Court held (1) the mere movement of an object could, for fourth amendment purposes, constitute a search; and (2) the search or seizure of an item in plain view must be supported by probable cause. In *Hicks*, a shot was fired through the floor of an apartment. Police suspected the shot emanated from defendant's apartment and entered it to search for evidence associated with the

shooter or the gun. While there, one of the officers noticed two sets of expensive stereo equipment which seemed out of place in the otherwise "squalid" apartment. The officer then read and recorded the serial numbers of the components, moving some of them in the process. Upon his discovering the components were stolen, the components were seized, and defendant was arrested and charged with theft. Defendant moved to suppress the evidence that had been seized. The Supreme Court held that the movement of some of the components to read and record their serial numbers constituted a search which must be supported by probable cause:

> "Merely inspecting those parts of the turntable that came into view during the latter search would not have constituted an independent search, because it would have produced no additional invasion of [defendant's] privacy interest. [Citation.] But taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of [defendant's] privacy unjustified by the exigent circumstance that validated the entry." *Hicks*, 480 U.S. at 325, 94 L. Ed. 2d at 354, 107 S. Ct. at 1152.

In the present case, Desecki's shaking of the prescription bottle and reading of the label thereon constituted a search and must be supported by independent probable cause. Any contention that it was necessary to disturb, read, and shake the prescription bottle to search for the weapon is unconvincing. Therefore, it is necessary to determine whether the mere presence of a prescription bottle in a glove compartment constitutes probable cause to believe that evidence of criminal activity or contraband is contained therein, necessitating a further search. The State maintains Desecki was entitled to continue his search because the prescription bottle was in plain view and, to an officer of Desecki's experience, its incriminating nature was immediately apparent.

Items in plain view are subject to a further search or seizure if (1) the initial intrusion which brings the police within plain view of the article is itself lawful; and (2) there is a nexus between the item sought to be searched or seized and criminal activity. (See *Horton v. California* (1990), 496 U.S. 128, 136, 110 L. Ed. 2d 112, 123, 110 S. Ct. 2301, 2308; *People v. Harrell* (1992), 226 Ill. App. 3d 866, 874, 589 N.E.2d 943, 948-49.) As we have stated earlier, the initial intrusion which brought the prescription bottle in plain view was itself lawful as Desecki had probable cause to search the glove compartment for the weapon allegedly possessed by defendant. To prove the nexus

between the prescription bottle and criminal activity, the State must show that there was probable cause to believe the bottle contained evidence of criminal activity or contraband. See *Hicks*, 480 U.S. at 326-27, 94 L. Ed. 2d at 354-55, 107 S. Ct. at 1153-54.

The State likens this situation to the one encountered in *Texas v. Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535, wherein defendant was stopped at a routine checkpoint when a police officer spotted a green, opaque party balloon, knotted near the top, drop from the hand of the driver. The officer also saw several plastic vials, a quantity of loose white powder, and an open bag of party balloons in the partially opened glove compartment. Additionally, the officer noticed a trace of powdery substance within the tied-off portion of the balloon. The officer seized the balloon, ordered the defendant out of the car and then conducted a search of the car, which revealed additional contraband. The defendant filed a motion to suppress the balloon and its contents, later determined to be heroin. The United States Supreme Court held that the seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming there is probable cause to associate the property with criminal activity. (*Brown*, 460 U.S. at 741-42, 75 L. Ed. 2d at 513-14, 103 S. Ct. at 1543.) Therefore, the State need only show that the facts available to the officer would warrant a person of reasonable caution in the belief that certain items may be contraband or useful as evidence of a crime. (*Brown*, 460 U.S. at 742, 75 L. Ed. 2d at 514, 103 S. Ct. at 1543.) While the facts in *Brown* do tangentially reflect the facts here, we find two distinguishing characteristics: (1) the packaging in *Brown* (uninflated, tied-off balloon) was distinctive to the drug trade while a prescription bottle is capable of carrying numerous legitimate items; and (2) the officers in *Brown* had corroborating evidence not present here, *i.e.*, that the balloons may have contained a controlled substance. We find the case of *People v. Penny* (1989), 188 Ill. App. 3d 499, 544 N.E.2d 1015, to be more applicable.

In *Penny*, defendant's vehicle was stopped because its license plate sticker had expired. Upon encountering defendant, the attending officers noticed defendant's hands were shaking. One of the officers looked inside the vehicle and saw "a package, approximately seven inches in diameter and four inches thick, wrapped in a brown opaque plastic material" on the floor of the car. (*Penny*, 188 Ill. App. 3d at 500, 544 N.E.2d at 1016.) The officer opened the car door and took out the package, which he described as "looking 'like a kilo of cocaine' and feeling 'like a brick.'" (*Penny*, 188 Ill. App. 3d at 500, 544 N.E.2d at 1016.) The officer poked a hole in the top of the pack-

age and saw a white powder which was later determined to be cocaine. The appellate court upheld the trial court's suppression order, stating: "[T]he package could have contained numerous legitimate items. There was nothing about the package itself or about the surrounding circumstances that suggested it contained contraband." *Penny*, 188 Ill. App. 3d at 503, 544 N.E.2d at 1017.

■ Here, Desecki testified that, in his experience as a police officer, he had seen drugs (illegal) packaged in prescription bottles before. The State maintains that, to an officer of Desecki's experience, the presence of the prescription bottle was clear evidence of criminal activity. We disagree. Nothing about a prescription bottle is so unique that it would immediately suggest criminal activity. (See *State v. Meichel* (La. 1974), 290 So. 2d 878, 880 (prescription bottle without prescription label in automobile did not constitute probable cause); *State v. Baxter* (Okla. Crim. App. 1974), 528 P.2d 347, 349 (police officer's search of unlabeled Geritol bottle was "based upon the officer's mere suspicion, rather than on probable cause, to believe that the bottle contained contraband").) While there is a chance a prescription bottle may contain a controlled substance, it is equally, if not more, likely to contain a number of innocent objects such as a valid prescription, aspirin, thumbtacks or nothing at all. Probable cause requires more than simply having seen an item associated with criminal activity on an earlier occasion. As Desecki had no probable cause to read the label on the bottle or shake the bottle, the search should have terminated when he became aware that the weapon was not contained in the glove compartment.

For the foregoing reasons, the trial court erred in denying defendant's motion to suppress. Defendant claims no error regarding his conviction for resisting a peace officer. Accordingly, we affirm defendant's conviction for resisting a peace officer and reverse his conviction for possession of a controlled substance and remand for a new trial on that charge.

Affirmed in part, reversed in part, and remanded.

STEIGMANN, P.J., and KNECHT, J., concur.