No. 2--96--0215

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Stephenson County.

)

Plaintiff-Appellant, )

) No. 95--CM--1040

v. )

)

POWELL B. GREENE, ) Honorable

) Barry R. Anderson,

Defendant-Appellee. ) Judge, Presiding.

________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

The State appeals the trial court's order suppressing the evidence of cannabis found during a search under defendant's sofa cushion.  The issues on appeal are whether:  (1) the police officer was permitted to enter defendant's porch and house to determine whether someone inside was in need of emergency aid, following a 911 hang-up call; and (2) once inside, the police officer was justified in searching under defendant's sofa cushion.  We reverse and remand.

On July 25, 1995, defendant, Powell B. Greene, was charged with possession of not more than 2.5 grams of a substance containing cannabis (720 ILCS 550/4(a) (West 1994)).  On November 13, 1995, defendant filed a motion to suppress the evidence of the cannabis found during a search of his residence.  On that same day, the trial court conducted a hearing on defendant's motion.

Defendant testified that, on July 24, 1995, at about 11:15 p.m., he was watching television in his home when he heard a pounding at his front door.  Defendant asked who it was, and they responded, "Police."  Defendant looked out and saw two male police officers standing on his front screened porch.  In order to enter the screened porch, the officers had broken the eye hook that locked the door to the porch.  

An officer told defendant that the police had received a 911 call.  Defendant told the officers that he had mistakenly dialed 911 when he was attempting to dial area code 901.  One of the officers asked if they could search defendant's residence, but defendant refused to consent to the search.  The officer kept talking about the 911 call and said that they wanted to check to see if anyone was harmed.  Defendant finally told the officers to "just peep in the house, look in the house.  There is no one here but me."  One officer walked through the house and then insisted that defendant get up from the couch.  The officer reached under a pillow on the couch and found a small amount of marijuana.  Defendant had not consented to the officer's search under the pillow.

On cross-examination, defendant testified that there was no odor of cannabis in the house.  He also testified that he did not hear the eye hook coming off the screen door or any banging at the screen door.  Defendant also testified that he did not put anything under the pillow after the officer arrived at the front door.  Defendant admitted that he had told the officer that there was nothing under the pillow and that the lady from 911 called back and that he had let the answering machine pick up the call.  

The trial court took judicial notice of the fact that the area code for western Tennessee is 901.

Linda Harnish testified that she is a 911 dispatcher for Stephenson County and that, on July 24, 1995, she received a 911 hang-up call.  The 911 system is an enhanced system which shows the address, phone number, and the resident's name when a call is received.  The system also has the capacity to do an instant redial if there is a hang-up call.  When the system redialed in the present case, defendant's answering machine answered.  The procedure for a hang-up call is immediately to make a "call" ticket and notify the proper police authority of the call.  In the present case, the proper police authority was the Stephenson County sheriff's department.  Harnish notified the sheriff's department that there was a 911 hang-up call and that there was no response on redial.  

On cross-examination, Harnish testified that it is standard operating procedure on all 911 hang-up calls to send an officer to verify that nothing is amiss at that location and that there is not an emergency.

Deputy Patrick McNamer testified that, on July 24, 1995, he was dispatched to go to 8 North Rose Street after a 911 hang-up call.  All McNamer knew when he responded was that, after the hang-up, the dispatcher was connected with an answering machine on redial.  McNamer parked his vehicle in the street and walked to the front porch.  There was neither any furniture nor any other objects on the front porch.  The door leading into the house itself was closed.  McNamer walked across the porch and knocked on the inner door.  He looked in the window on the door and saw defendant watching television in the living room.  Defendant came to the door and clicked the dead bolt lock.  McNamer held a flashlight on himself to show defendant that he was a police officer.  Defendant then walked back to the couch, lifted the cushion, and moved his hand as if he were putting something under the cushion.  McNamer did not know whether it was a weapon or contraband. 

While defendant was going back to the couch, McNamer knocked harder and said, "Sheriff's Department.  Open the door."  Defendant returned to the door, unlocked and opened it.  McNamer stepped into the doorway and told defendant that he was with the sheriff's department and that they had received a 911 call from defendant's address.  Defendant said that he had not called them.  McNamer asked if there was anyone else in the house and defendant said that there was not.  McNamer asked if they could search the house.  Defendant sat down on a chair as he was asked to do, and Deputy Young, who was with McNamer, watched defendant.  The house was small, and McNamer did not find anyone else in the house.  McNamer again asked defendant if he had called 911 and, this time, defendant said that he may have dialed incorrectly when he was trying to call someone in Tennessee.

McNamer testified that, as he was walking through defendant's home, he noticed a strong odor of burning marijuana.  In his training and experience as a deputy, he had smelled marijuana in the past.  McNamer believed that defendant had put marijuana under the cushion of the couch.  McNamer asked defendant what was under the cushion, and defendant responded, "Nothing."  McNamer then lifted the cushion and found a small plastic bag which contained a green leafy substance.  

On cross-examination, McNamer testified that there was a screen door on the porch.  However, the screen door was unlocked.  He also testified that it is the sheriff's department's policy always to enter the premises after a 911 hang-up call.

The trial court held that the deputy had no right to enter defendant's porch because there was neither probable cause nor exigent circumstances.  Since the deputy had no right to be on the front porch, he had no right to look into defendant's window and observe defendant putting something under the pillow.  Therefore, the trial court granted defendant's motion to suppress.  

On January 30, 1996, the trial court denied the State's motion to reconsider.  In its motion, the court stated, 

"Deputy McNamer *** evidently unhooked the screen door to the screened-in porch ***.

***

***  McNamer could probably go to the door of the screened-in porch to attempt to raise occupants, but he had no right to unhook the door to the screened-in porch, or then to look through the door window in an attempt to observe illegal conduct."        

The State filed a timely certificate of substantial impairment and a timely notice of appeal.

As an initial matter, we note that we may reverse the trial court's determination on a motion to suppress only where it is against the manifest weight of the evidence.  
People v. Paudel
, 244 Ill. App. 3d 931, 940 (1993).  The trial court's function is to determine the witnesses' credibility and weigh the testimony presented at the hearing.  
Paudel
, 244 Ill. App. 3d at 940.  We review questions of law, of course, 
de
 
novo
.  
People v. Krueger
, 175 Ill. 2d 60, 64 (1996).  After reviewing the record, we determine that the trial court's factual findings are not against the manifest weight of the evidence.  Thus, we consider the issues raised in this matter to be questions of law and, as such, review them 
de
 
novo
.

We next consider the State's contention that the officers' conduct was justified by exigent circumstances.  The fourth amendment proscribes all unreasonable searches and seizures, and warrantless searches of private residences are considered 
per
 
se
 unreasonable unless a specifically established and well-defined exception applies.  
Paudel
, 244 Ill. App. 3d at 939.  In the absence of a warrant, exigent circumstances, or consent, the entry into a home is not an authorized act.  
People v. Swiercz
, 104 Ill. App. 3d 733, 737 (1982).  

We have recognized in the context of exigent circumstances that officers may make a warrantless entry into a home where the officers reasonably believe an emergency exists which mandates immediate action to aid persons or property within the home.  
People v. Speer
, 184 Ill. App. 3d 730, 738 (1989).  Therefore, the critical question is whether a 911 hang-up call with no answer on redial was sufficient for the officers reasonably to believe that an emergency existed within the home which required their assistance.

There is no simple test for determining the reasonableness of the belief that an emergency existed; however, all of the circumstances known to the police at the time of the entry must be considered.  
Speer
, 184 Ill. App. 3d at 739.  Moreover, we agree with Judge Burger's comments in 
Wayne v. United States
, 318 F.2d 205, 212 (D.C. Cir. 1963):

"[A] warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person.  The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.  Fires or dead bodies are reported to police by cranks where no fires or bodies are to be found.  Acting in response to reports of 'dead bodies,' the police may find the 'bodies' to be common drunks, diabetics in shock, or distressed cardiac patients.  But the business of policemen and firemen is 
to act
, not to speculate or meditate on whether the report is correct.  People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process.  Even the apparently dead often are saved by swift police response.  A myriad of circumstances could fall within the terms 'exigent circumstances' ***, 
e.g.
, smoke coming out a window or under a door, the sound of gunfire in a house, threats from the inside to shoot through the door at police, reasonable grounds to believe an injured or seriously ill person is being held within."  (Emphasis in original.)   
   

With the foregoing principles in mind, we first consider the officers' entry of defendant's screened porch.  The trial court held that there were no exigent circumstances to justify the officers' entry into the curtilage of defendant's residence.  We disagree.

Defendant possessed a lesser expectation of privacy in his porch than in his residence proper.  
People v. Arias
, 179 Ill. App. 3d 890, 895 (1989).  In 
Arias
, the defendant was a suspect in a murder.  
Arias
, 179 Ill. App. 3d at 892.  Police officers went to the defendant's home to ask him to accompany them to the police station.  The officers walked up an outside staircase, opened and entered the porch door at the top of the stairs, and knocked on the door to the house.  
Arias
, 179 Ill. App. 3d at 893.  The defendant's brother answered the door and let the officers in the house.  The defendant accompanied the officers to the police station where he subsequently confessed.  
Arias
, 179 Ill. App. 3d at 893-94.  The trial judge suppressed the defendant's confession and concluded that his constitutional rights were violated when the police entered the exterior door of the porch without a warrant, exigent circumstances, or consent.  
Arias
, 179 Ill. App. 3d at 894-95.  However, the appellate court reversed the suppression of the confession and held that the porch was not a living area and that the officers entered the porch merely to knock on the front door to the residence.  
Arias
, 179 Ill. App. 3d at 895-96.

For the purpose of deciding whether the officers had a right to enter the screened porch, we find the facts and reasoning of 
Arias
 compelling.  The record indicates that the screened porch was not a living area, that there was nothing on the porch, and that it was vacant when the officers arrived.  The officers knocked on the screen door in an attempt to raise the occupant of the house.  When they were unable to attract defendant's attention, the trial court found that the officers made a peaceful, nonviolent entry onto the porch.  In light of the fact that someone at defendant's residence had made a 911 call and there was no answer when the 911 operator redialed the number, the officers were justified in making a peaceful entry onto the porch for the purpose of attempting to raise the occupant of the house.  We emphasize that the officers' entry was peaceful; this is not a case in which the officers broke down the door to the porch or house, and we decline to comment on such a situation as the determination of exigent circumstances depends on the totality of the evidence presented in the case at hand.  Thus, we find that the officers' belief that a potential emergency was justified and their entry onto defendant's porch was proper.

We next consider the officers' entry of defendant's residence.  The officers knocked on defendant's front door, spotlighting themselves with their flashlights and calling out their identification.  At that point, defendant locked the front door and returned to his couch, apparently hiding something under it.  Deputy McNamer testified that this made him even more apprehensive; he had no way of knowing what the situation was in the house.  When defendant finally opened the door, the record indicates that he initially denied making the call.  We conclude that these peculiarities made it reasonable for the police to believe that someone within the house was attempting to call 911 for help but was prevented from completing the call.  Accordingly, the officers' entrance was justified by the exigent circumstances presented to them.  If we were to adopt the rule urged by defendant, the police would never be authorized to enter and offer assistance in such a situation.  

Moreover, it is apparent that defendant consented to the officers' entrance into his residence.  The trial court found that defendant consented to the officers' entry in order to check on the well-being of any other occupants of the house.  Defendant testified that he told the officers to "look in the house."  McNamer testified that defendant agreed to let him check to see if anyone else were in the house.  Thus, even in the absence of the exigency, defendant consented to the search of the residence.

The final issue on appeal is whether, once inside, the police officer was justified in searching under defendant's sofa cushion.  The State argues that the search was justified by the police officer's "plain view" observation of defendant placing something under the sofa cushion and the officer's detection of the strong odor of burning marijuana.  

The "plain view" doctrine allows police to search or seize evidence without a warrant if (1) the police's initial intrusion is lawful or they are lawfully in an area where they can view the evidence to be searched or seized, and (2) it is immediately apparent that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure.  
Horton v. California
, 496 U.S. 128, 136-37, 110 L. Ed. 2d 112, 123, 110 S. Ct. 2301, 2308 (1990).  Moreover, 
Arizona v. Hicks
, 480 U.S. 321, 326, 94 L. Ed. 2d 347, 355, 107 S. Ct. 1149, 1153 (1987), held that probable cause is required in order to invoke the "plain view" doctrine.  

In the present case, defendant argues that neither were the police officers lawfully on the porch when they made the "plain view" observation nor was it immediately apparent that the object defendant placed under the sofa cushion may have been evidence of a crime, contraband, or otherwise subject to seizure.  We have already held that the officers were lawfully on defendant's porch when they made the "plain view" observation.  However, the remaining question is whether the "immediately apparent" requirement was met.

First, defendant argues that the court's decision in 
People v. Williamson
, 241 Ill. App. 3d 574 (1993), supports his argument that the object's incriminating character was not immediately apparent.  In 
Williamson
, the court held that a police officer's search of a prescription bottle was not justified under the "plain view" doctrine.  241 Ill. App. 3d at 580-81.  The court noted that nothing about a prescription bottle is so unique that it would immediately suggest criminal activity.  
Williamson
, 241 Ill. App. 3d at 583.  In 
Williamson
, the State failed to demonstrate any nexus between the bottle and any criminal activity or contraband since the use of the bottle was not unique to the illicit drug trade and such bottles could contain many innocent objects.  241 Ill. App. 3d at 583.  
     

In the present case, unlike 
Williamson
, the police officer's detection of the odor of marijuana and his observation of defendant placing something under the sofa cushion constitute the nexus between the object searched and the contraband.  Therefore, we conclude that 
Williamson
 does not preclude the search in the present case.

Next, defendant argues that the court in 
People v. Cohen
, 146 Ill. App. 3d 618 (1986), held that an officer who smelled an odor of marijuana had not made a "plain view" observation.  However, 
Cohen
 recognized the well-established rule that the detection of the odor of burnt cannabis by a trained police officer is a permissible method of establishing probable cause that the substance is present.  
Cohen
, 146 Ill. App. 3d at 623.  The 
Cohen
 court merely held that, where the officers had detected the odor on persons outside a home, the officers were not justified in conducting a general exploratory search of the remote areas of the home because they had no reason to believe controlled substances would be located there.  
Cohen
, 146 Ill. App. 3d at 625.  In the present case, unlike 
Cohen
, defendant's actions combined with the smell of the marijuana to give the officers a reason to believe that marijuana would be located under the sofa cushion.

Next, defendant argues that the search of the sofa cushion was impermissible because the exigency that justified the entry had passed when the police searched under the sofa cushion.  Defendant cites 
Paudel
, 244 Ill. App. 3d at 943, in which we noted that a warrantless search must be strictly circumscribed by the exigencies which justify its initiation.  However, the Court in 
Hicks
 made it clear that it is only the primary search itself which must be strictly circumscribed by the exigencies that justify its initiation.  
Hicks
, 480 U.S. at 325-26, 94 L. Ed. 2d at 354, 107 S. Ct. at 1153.  The Court in 
Hicks
 explained that that lack of relationship always exists with police action validated under the "plain view" doctrine.  Accordingly, 
Paudel
 does not preclude the search of objects in plain view provided the police have probable cause to believe that the search will reveal evidence of criminal activity.  

Finally, defendant argues that the decision in 
Hicks
 still supports the suppression of the evidence because the Court upheld the suppression of the evidence there where the police searched an object (stereo equipment) which was not contraband 
per
 
se
 and which was unrelated to the exigency which justified the initial entry.  However, unlike the present case, the State in 
Hicks
 conceded that the police did not have probable cause to believe that the stereo equipment was evidence of a crime.  
Hicks
, 480 U.S. at 326, 94 L. Ed. 2d at 355, 107 S. Ct. at 1153.  It was the conceded lack of probable cause and not the fact that the object searched was unrelated to the initial entry which precluded the State in 
Hicks
 from invoking the "plain view" doctrine.  In the present case, we agree with the State that the officer's "plain view" observation of defendant placing the object under the sofa cushion and his trained ability to detect the odor of burnt cannabis gave the officer probable cause to believe that a search of the sofa cushion would reveal evidence of a crime.

Moreover, we note that, even if the "plain view" doctrine were inapplicable, the search in the present case could be upheld based on probable cause with exigent circumstances present which made it impractical to obtain a warrant.  See 
Katz v. United States
, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967).  In 
People v. Abney
, 81 Ill. 2d 159, 169-71 (1980), our supreme court noted some exigent circumstances which may excuse the failure to obtain a warrant:  (1) the recentness of the offense and the need for prompt action, such as under the hot-pursuit doctrine; (2) the absence of deliberate or unjustified delay by officers during which a warrant could have been obtained; or (3) an armed suspect who had exhibited signs of violence.  Other factors which may suggest that the officer acted reasonably are (1) a clear showing of probable cause; (2) defendant was clearly identified; (3) the belief that defendant was on the premises; and (4) the entry was peaceful.  
Cohen
, 146 Ill. App. 3d at 624.

In the present case, we believe that the circumstances demonstrate that an exigency was present.  First, the recentness of the offense and the need for prompt action were demonstrated by the fact that the odor of burnt cannabis was still present.  Although the potential destruction of evidence, standing alone, does not excuse obtaining a warrant (see 
People v. Ouellette
, 78 Ill. 2d 511, 520 (1979)), it is one factor to consider.  Second, the officers did not deliberately or unjustifiably delay during which a warrant could have been obtained.  Third, defendant's movements indicated that the object under the pillow could have been a weapon.  Fourth, the officers had probable cause to believe that a search of the sofa cushion would reveal evidence of a crime.  Finally, the entry was peaceful. 

We reverse the trial court's order suppressing the evidence and remand this cause for further proceedings consistent with the views expressed herein.

Reversed and remanded.

COLWELL, J., concurs.

JUSTICE BOWMAN, dissenting:

The majority concludes today that a 911 hang-up call justifies a warrantless invasion of the private home where the call was placed.  I cannot agree with this unprecedented expansion of the fourth amendment.  For the following reasons, I would affirm the trial court but remand the matter for further consideration on whether defendant consented to the entry and search of his home.

The fourth amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ***."  U.S. Const., amend. IV.  Fundamental to individual security is our deep-rooted respect for the sanctity of the home.  As this court has explained:

"It is axiomatic that the physical entry of the home is the chief evil to which the wording of the fourth amendment is directed, and a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the fourth amendment on agents of the government who seek to enter the home for purposes of search or arrest."  
People v. Koniecki
, 135 Ill. App. 3d 394, 398 (1985).

The underlying command of the fourth amendment is that searches and seizures be reasonable.  
New Jersey v. T.L.O.
, 469 U.S. 325, 337, 83 L. Ed. 2d 720, 731, 105 S. Ct. 733, 740 (1985).  Warrantless searches are 
per se
 unreasonable (
Katz v. United States
, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967)), unless a specifically established and well-defined exception applies (
People v. Paudel
, 244 Ill. App. 3d 931, 939 (1993)).  

For instance, the Supreme Court has recognized an "emergency" exception to the warrant requirement in instances where police officers "reasonably believe that a person within is in need of immediate aid."  
Mincey v. Arizona
, 437 U.S. 385, 392, 57 L. Ed. 2d 290, 300, 98 S. Ct. 2408, 2413 (1978); see 
Paudel
, 244 Ill. App. 3d at 939.  The reasonableness of the belief that an emergency exists is determined by the entirety of all the circumstances known to the police at the time of entry.  
People v. Speer
, 184 Ill. App. 3d 730, 739 (1989).  

The majority today holds that the police officers were excused from obtaining a warrant because it was reasonable for them to believe that someone within the residence was attempting to call 911 for help but was prevented from completing the call.  According to the majority, the following factors establish the reasonableness of the officers' belief that an emergency existed: (1) they knew that a 911 hang-up call was made from the residence; (2) they knew there was no answer on redial; (3) defendant should have answered the call from the 911 operator if there was no emergency; (4) defendant initially denied placing the call; and (5) defendant should have admitted immediately that he dialed 911 by mistake.  

I address the latter two factors first.  According to the majority, defendant should not have initially denied to the police placing the call, and he should have admitted immediately that he dialed 911 by mistake.  However, the police only became aware of these circumstances by speaking with defendant 
after
 they had entered the screened porch.  As such, the propriety of using these circumstances depends on whether the police lawfully entered the porch.  In other words, these circumstances are relevant to the majority's analysis only if the officers' initial entry on the porch was lawful.  Realizing this, the majority concludes that the police lawfully entered the porch.

Moreover, the proper inquiry is whether the police could lawfully enter the screened porch via the locked screen door.  Under the circumstances of this case, I believe that the porch was a living area which constituted a part of defendant's home for purposes of fourth amendment protection.  See 
People v. White
, 117 Ill. 2d 194 (1987).  Parenthetically, I note that the majority's reliance on 
People v. Arias
, 179 Ill. App. 3d 890 (1989), is misplaced, because in 
Arias
, unlike here, the door leading into the screened porch was not locked.  See 
Arias
, 179 Ill. App. 3d at 895-96.  

The majority's analysis is therefore misguided, because it considers whether it was reasonable for the police to believe that someone within the home was in need of aid based on circumstances that came to the officers' attention 
after
 they had already unlawfully entered the home.  The proper analysis is whether it was reasonable for the officers to believe, 
before
 they unhooked the door to the screened porch, that someone within the home was in need of aid.   

Under this analysis, the officers' beliefs were not reasonable.  The only factors which arguably could support such a belief are the first three factors listed by the majority: that the officers knew that a 911 hang-up call was made from the home, that there was no answer on redial, and that defendant should have answered the call from the 911 operator if there was no emergency.  In my opinion, these factors, by themselves, do not create a reasonable belief in a police officer that a person inside a home is in need of emergency aid.  I do not believe that the fourth amendment, with its inherent emphasis on protecting the privacy of one's home, permits police officers to enter a home based on nothing more than a 911 hang-up call.  I would therefore affirm the trial court's ruling.

I further disagree with the majority's conclusion that defendant consented, as a matter of law, to the search of his home.  Assuming that the officers' entry into defendant's home was not a violation of the fourth amendment, I would remand this case for a further hearing on the issue of consent.  I note that in such a  proceeding the trial court would have to consider (1) whether defendant consented to the entry and search of his home; (2) whether the consent was voluntary; and (3) whether the consent was obtained by the exploitation of the prior illegal entry and search such that the consent "cannot be said to have been obtained by means sufficiently distinguishable to be purged of the preliminary taint."  
Koniecki
, 135 Ill. App. 3d at 403; see 
People v. Vought
, 174 Ill. App. 3d 563, 571-72 (1988).   

For the foregoing reasons, I respectfully dissent.