**TRANS–CARE, INC., Appellant,**

v.

**BOARD OF COMMISSIONERS OF the COUNTY OF VERMILLION and Paul M. Lee d/b/a/ Vermillion County EMS, Appellees.**

No. 83A01–0501–CV–41.

Court of Appeals of Indiana.

Aug. 10, 2005.

John F. Ittenbach, Richard T. Trettin, Ittenbach Johnson Trettin & Koeller, Indianapolis, for Appellant.

Jon C. Spurr, Spurr Law Offices, Jason M. Saunders, Saunders Law Offices, P.C., Terre Haute, for Appellee, Board of Commissioners of the County of Vermillion.

## OPINION

BARNES, Judge.

### Case Summary

Trans–Care, Inc. appeals the trial court's grant of summary judgment in favor of the Board of Commissioners of Vermillion County ("the Commissioners" or "the County") and Paul Lee, d/b/a Vermillion County EMS. We affirm.

### Issue

The dispositive issue is whether Trans–Care had standing to challenge the County's award of a contract to Lee for the provision of emergency ambulance services.

### Facts

In December 1999, the County awarded Trans–Care a contract to provide emergency ambulance or medical services ("EAS" or "EMS") for the years 2000, 2001, and 2002. Trans–Care is located in Terre Haute, Vigo County. In mid–2002, the County published notice of its intent to accept sealed bids for the provision of EAS for the years 2003, 2004, and 2005. Trans–Care, Lee, and Providence Medical Group ("Providence") submitted bids to provide EAS as requested. At the time the bids were submitted, only Trans–Care was certified by the State Emergency Management Agency ("SEMA") as an EAS/EMS provider, pursuant to state statutes and regulations. Neither Lee nor Providence had any EAS experience, equipment, or employees at the time.

On June 25, 2002, the Commissioners opened the EAS bids. Providence, the low bidder, was awarded the contract. On September 17, 2002, Trans–Care filed a declaratory judgment action against the County and Providence seeking to void Providence's contract. At a December 3, 2002 executive meeting of the Commissioners, Providence asked to be released from its contract. The Commissioners did so, and also rejected the first bids of Trans–Care and Lee.

On December 11, 2002, Trans–Care and Lee submitted new proposals for providing EAS in the County to the Commissioners. These proposals did not come in the form of sealed bids. At the conclusion of this meeting, Lee was awarded the contract. On December 30, 2002, SEMA approved Lee, d/b/a Vermillion County EMS, as a certified EAS/EMS provider in accordance with state law. Lee began providing EAS service in the County in January 2003.

Also in January 2003, Providence was dismissed as a defendant in Trans–Care's still pending declaratory judgment action. Trans–Care later sought and was granted permission to file a first, then second amended complaint that specifically attacked the contract awarded to Lee and sought to invalidate that contract. The trial court also required Trans–Care to name Lee as an additional defendant. On August 11, 2004, Trans–Care moved for summary judgment. The County and Lee responded with cross-motions for summary judgment. On January 10, 2005, the trial court denied Trans–Care's summary judgment motion and granted the County's and Lee's cross-motions for summary judgment, disposing of all of Trans–Care's claims. Trans–Care now appeals.

### Analysis

■ "Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Save The Valley, Inc. v. Indiana–Kentucky Elec. Corp.,* 820 N.E.2d 677, 679 (Ind.Ct.App.2005), *aff'd on rehearing,* 824 N.E.2d 776 (Ind.Ct.App.2005), *trans. pending.* All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *JSV, Inc. v. Hene Meat Co., Inc.,* 794 N.E.2d 555, 560 (Ind.Ct.App.2003). Further, although they may assist our review, we do not owe deference to the findings and conclusions entered by the trial court here in its summary judgment order. *See Save the Valley,* 820 N.E.2d at 679. Instead, we may affirm on any ground or theory supported by the designated evidence. *Malone v. Price,* 755 N.E.2d 213, 216 (Ind.Ct.App. 2001). The question of standing presents an issue of law. *See Embry v. O'Bannon,* 798 N.E.2d 157, 159 (Ind.2003).

■ Indiana Code Section 34–14–1–2, part of the Declaratory Judgment Act, provides:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

The basis of jurisdiction under the Declaratory Judgment Act is the existence of a justiciable controversy or question, which is clearly defined and affects the legal right, the legal status, or the legal relationship of parties having adverse interests. *Little Beverage Co., Inc. v. DePrez,* 777 N.E.2d 74, 83 (Ind.Ct.App.2002), *trans. denied.* A primary requirement of the Act is that a plaintiff demonstrate that it has standing for the relief requested. *Id.* The relief Trans–Care sought was invalidation of the EMS contract between the County and Lee.

■ The primary cases concerning standing in lawsuits such as Trans–Care's, where a bidder has not been awarded a local government contract, have addressed construction bidding governed by the Indiana Public Purchasing laws now found in Article 5–22 of the Indiana Code. *See Brownsburg Cmty. Sch. Corp. v. Natare Corp.,* 824 N.E.2d 336, 338–39 (Ind.2005); *All–Star Constr. & Excavating, Inc. v. Bd. of Pub. Works,* 640 N.E.2d 369, 370 (Ind. 1994); *Shook Heavy & Envtl. Constr. Group v. City of Kokomo,* 632 N.E.2d 355, 358 (Ind.1994). These cases all clearly hold that only a citizen or taxpayer of the locality may challenge the award of a contract under these laws and the Public Lawsuit Statute, now located at Indiana Code Chapter 34–13–5.[1] The losing bidder does not have standing to do so, unless it is also a citizen or taxpayer of the locality. *See Natare,* 824 N.E.2d at 338–39. Trans–Care is not a citizen or taxpayer of Vermillion County, but apparently of Vigo County.

■ Additionally, the parties agree that a contract for the provision of EMS is one

---

1. A "public lawsuit" includes "any action in which the validity, location, wisdom, feasibility, extent, or character of construction, financing, or leasing of a public improvement by a municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin the construction, financing, or leasing ...." Ind. Code § 34–6–2–124(a)(1).

for personal services. The award of such a contract is not governed by the strict bidding procedures outlined by the Public Purchasing laws. Instead, "The purchasing agency of a governmental body may purchase services using any procedure the governmental body or the purchasing agency of the governmental body considers appropriate." Ind.Code § 5–22–6–1. As our supreme court has observed, "procurement of personal services ... are not included within the scope of the Public Purchasing Statute and, therefore, not subject to it." *Shook*, 632 N.E.2d at 357. Trans–Care has even less of an argument regarding standing than the losing bidders in *Natare*, *All–Star*, and *Shook*, because its was a bid for personal services and thus it "had no legal right to have its bid ... even considered" by the County. *See id.* Trans–Care lacked standing under the Public Lawsuit Statute to bring this action.

*Shook* also addressed whether the losing bidder in that case had standing to bring a common law cause of action seeking injunctive relief prohibiting the award of the construction contract at issue to the other bidder. The court held that it did not. *See id.* at 359–60. It found the following considerations to be important:

> First, there is a clear public interest in expeditious construction of public works projects. Nowhere is time money more than in the construction field. And prompt completion of public construction projects is often important from a public safety standpoint. Second, the cost of litigating contracts awarded under competitive bidding statutes—perhaps multiple lawsuits in respect of a single contract award if more than one

unsuccessful bidder seeks relief—could pose a serious threat to public treasuries.

*Id.* at 359. In light of these considerations, the court concluded that it should be left to the legislature, not the courts, to decide whether to allow a cause of action by a losing bidder for a government contract. *Id.* Additionally, the court noted that the legislature had by statute allowed for the appeal of certain municipal decisions, but none allowed a losing bidder to challenge the award of a government contract. The court concluded based on this omission, "there is a strong inference that the legislature specifically intends that there be no cause of action" in such a situation. *Id.*

The second *Shook* consideration regarding the cost of lawsuits is just as applicable in the context of a services contract as in a construction contract.[2] The first consideration regarding the expeditious construction of public works projects is not directly applicable here. However, the public safety concern inherent in the provision of EMS is even more apparent than in the public construction context. The citizens and taxpayers of Vermillion County made a decision, through their Commissioners, to award the contract to Lee. The provision of these services is of vital public interest and, in this factual scenario, cannot and should not be interfered with by a disgruntled losing bidder. Also, the designated evidence in this case establishes that Lee has provided Vermillion County with EMS in compliance with all applicable regulations since the start date of the contract. There is no indication that awarding the contract to Lee has threatened the

---

**2.** If anything, this consideration weighs even more heavily here against allowing a cause of action to Trans–Care because the County was not required to award the EMS contract pursuant to statutorily-prescribed competitive bidding procedures.

health or safety of the citizens of Vermillion County; by contrast, voiding the contract with Lee now might do so.

 On a related point, Trans–Care essentially argues that its lawsuit to void the County's contract with Lee is grounded in a concern over the statutes and regulations governing the provision of EMS in Indiana. It is clear, however, that SEMA is the entity charged with policing compliance with these statutes and regulations. *See* I.C. § 16–31–2–7. "As a general rule, a private party may not enforce rights under a statute designed to protect the public in general and containing a comprehensive enforcement mechanism." *LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1260 (Ind.2000). Such enforcement mechanism clearly exists here. *See, e.g.,* I.C. §§ 16–31–3–14 ("Disciplinary sanctions") and 16–31–3–17 ("Practice without certificate"). An affidavit from a SEMA employee indicated that SEMA was unconcerned with the practice of awarding EMS contracts to uncertified parties, so long as they became certified by the starting date of the contract. Trans–Care did not have standing to second-guess this decision and usurp SEMA's authority in this area.

Additionally, Trans–Care would have suffered no injury if Lee had failed to become a certified EMS provider by the contract's start date; Vermillion County and its citizens would have been the injured party. In such event, the County would have been left without an ambulance service and might have been forced to revisit its arrangements with Trans–Care.

The bid specification also directly stated that the ambulance services had to be performed "in conformance with all applicable laws and regulations" and if the contractor violated this provision and failed to correct such violation within thirty days, the County could "immediately terminate this Agreement." App. p. 528. The County did not have to invoke this provision or have to attempt to void its contract with Lee.

 The *Shook* court emphasized that losing bidders for a governmental contract generally have no more standing to challenge the validity of the contract eventually awarded than a random member of the public. Losing bidders for a privately-awarded contract, as a stranger to the contract eventually awarded, in most cases clearly lack standing to challenge the contract, and the same rule applies to governmental contracts, with at least one notable exception. *See Shook,* 632 N.E.2d at 360 n. 7. The exception, with respect to either public or private contracts, is if the losing bidder can establish fraud, collusion, "or other illegal procedures" in the award of the contract. *Id.*

The "illegal procedures" language is from *Gariup v. Stern,* 254 Ind. 563, 566, 261 N.E.2d 578, 581 (1970). The *Shook* court made clear that the "illegality" referred to in *Gariup* is a violation of the Indiana Antitrust Act. It stated that Indiana Code Section 24–1–2–7, authorizing the bringing of a lawsuit for a violation of Indiana Code Section 24–1–2–3,[3] "addresses the concern this court expressed in

---

**3.** Indiana Code Section 24–1–2–3 provides:

A person who engages in any scheme, contract, or combination to restrain or restrict bidding for the letting of any contract for private or public work, or restricts free competition for the letting of any contract

for private or public work, commits a Class A misdemeanor.

Indiana Code Section 24–1–2–7 in turn provides:

Any person who shall be injured in his business or property by any person or cor-

*Gariup* ... when we observed that a 'bidder invests considerable time, effort and money in submitting a bid and is pecuniarily damaged if illegal procedures are used to his disadvantage.' " *Shook*, 632 N.E.2d at 358. The *Shook* court also clearly stated, "In the absence of a violation of [Section] 24–1–2–3, the bidder has nothing more than 'a unilateral expectation or abstract desire' " in its bid and not a cause of action for losing the bid. *Id.* at 360 n. 7 (citing *Rice v. Scott County Sch. Dist.*, 526 N.E.2d 1193, 1197 (Ind.Ct.App.1988)).

Thus, with regard to Trans–Care's contention that awarding the EMS contract to Lee before he was EMS-certified was "illegal," this is not the type of alleged "illegality" that would grant it standing to bring a lawsuit for losing the bid. Rather, Trans–Care had to allege a violation of the Indiana Antitrust Act and, in the summary judgment context, designate evidence that would support such a claim. Trans–Care's complaint failed to allege any such violation, nor did its summary judgment motion; it only mentioned the possibility of "fraud" for the first time in response to the County's and Lee's cross-motions for summary judgment. Both Trans–Care's opening and reply briefs on appeal omit any reference or citation to the Indiana Antitrust Act, most notably Indiana Code Section 24–1–2–3. It fails to provide any analysis of Section 24–1–2–3 or to point to any designated evidence that might support a finding that the County's actions in awarding the EMS contract to Lee violated that statute's terms. Instead, Trans–Care's briefs only contain vague references to alleged collusion or "constructive fraud." It does appear from the record that the County was not inclined to renew its contract with Trans–Care, given its decision on two separate occasions to award the contract to bidders other than Trans–Care, both of whom lacked experience in providing ambulance services. This alone, however, does not establish a material issue of fact regarding the existence of fraud, collusion, or a violation of the Indiana Antitrust Act in the eventual award of the contract to Lee. On the contrary, there is evidence in the record that the County awarded the contract to Lee because he promised to provide three permanent ambulances in the County for less cost than Trans–Care's proposal for two permanent ambulances.

Trans–Care relies in part upon *Fuller v. Town of Vevay*, 713 N.E.2d 318 (Ind.Ct.

poration by reason of the doing by any person or persons of anything forbidden or declared to be unlawful by this chapter may sue therefor in the circuit or superior court of any county in which the defendant or defendants, or any of them, reside or are found without respect to the amount in controversy, and shall recover a penalty of threefold the damages which may be sustained, together with the costs of suit, including a reasonable attorney's fee.

Our supreme court recently concluded that Section 24–1–2–7 does not authorize a suit for treble damages against a governmental agency. *Natare*, 824 N.E.2d at 348. It expressly did not address the question of whether an injunctive remedy is available under the Indiana Antitrust Act and, if so, whether such a remedy could be sought against a governmental agency. *Id.* at 343 n. 7. Trans–Care effectively sought injunctive relief in this case against the County by attempting to have the contract between Lee and the County invalidated. Because Trans–Care has not argued a violation of the Indiana Antitrust Act, we also do not decide whether such relief against the County, as opposed to Lee, is permitted by the Act. The *Natare* opinion also notes that the "collusion or fraud" language in *Shook* actually comes from Indiana Code Section 24–1–2–4, "which provides that in cases of 'collusion or fraud ... among the bidders at the letting of any contract or work as provided in [Section 3] ... the principal who lets the contract ... shall not be liable for such letting or on account of such contract ...' " *Id.* at 339 (alterations and omissions in original).

App.1999), *trans. denied,* in support of its argument that it had standing to challenge the County's decision to award the EMS contract to Lee. There, two parties who lost a municipal trash disposal bid sued the municipality, alleging collusion and a violation of competitive bidding procedures required for certain trash collection contracts. The municipality contended that the parties were required to proceed under the Public Lawsuit Statute and had failed to do so. This court disagreed, stating that the trash collection contract "does not fall within the ambit of 'a public improvement' under the Public Lawsuit Statute." *Id.* at 320–21. We therefore concluded that the Public Lawsuit Statute did not apply in this case and it was "irrelevant" whether the parties met its requirements. *Id.* at 321. We then addressed whether the losing bidders had designated sufficient evidence on summary judgment to establish a possible violation of competitive bidding procedures in the award of the contract. *Id.* at 321–22.

We observe that *Fuller* never mentions the concept of standing; we presume the parties did not brief the issue in that way and, in any event, this court never analyzed whether the losing bidders had standing to challenge the award of the contract. Regardless, *Shook* clearly establishes that if there is neither standing to sue under the Public Lawsuit Act nor any allegation or evidence of a violation of the Indiana Antitrust Act, a bidder for a government contract cannot bring suit based on not being awarded the contract. *See Shook,* 632 N.E.2d at 359–60. If such a cause of action is to exist, the legislature must create it. *See id.* To the extent *Vevay* could be read as suggesting otherwise, it conflicts with controlling authority from our supreme court represented by *Shook.*

## Conclusion

We conclude that the trial court properly granted summary judgment in favor of the County and Lee. Trans–Care lacked standing to bring a cause of action challenging the validity of the contract between the County and Lee. It did not have standing to bring this suit under the Public Lawsuit Statute, nor has it alleged a violation of the Indiana Antitrust Act or designated evidence that would indicate such a possible violation. We affirm.

Affirmed.

KIRSCH, C.J., and BAKER, J., concur.