THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JASON J. KOESTER *et al.*, Defendants-Appellees.

Second District No. 2—02—0714

Opinion filed July 18, 2003.

Glen R. Weber, State's Attorney, of Galena (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

In this consolidated appeal, the State appeals the trial court's granting of defendants' motions to suppress evidence and confessions and motions to quash arrests. We affirm.

On March 31, 2002, defendants Jason J. Koester, Carrie Ann Davenport, Emily Kay Pearson, Josephine M. Skutt, Erika S. Young, and Annette L. Skutt were charged with consumption of alcohol by a person under the age of 21 years old. 235 ILCS 5/6—20 (West 2000).

Defendant Anthony M. Skutt was charged with contributing to the delinquency of a child. 720 ILCS 130/2a (West 2002). All defendants filed motions to quash arrests, suppress evidence, and suppress confessions.

At the joint evidentiary hearing, Jo Daviess County deputy sheriff Byran Purchis testified that he was dispatched to the Skutt home in response to a "911" call wherein the female caller hung up before speaking to the police dispatcher. The call came from the Skutt home. When the police dispatcher called the number back, the female who answered denied that anyone called "911" and stated that she was alone, despite the fact that the dispatcher heard voices and noise in the background. Purchis received a call from the dispatcher to investigate. The dispatcher also sent two additional squad cars as backup. Purchis testified that a hang-up "911" call is treated as an emergency because a concern arises that a victim, perhaps a rape or battery victim, may be prevented from calling or coerced into denying the call. The voices and noise in the background heightened the concern. Purchis used his emergency lights and siren while driving to the Skutt home.

Purchis stated that the Skutt home is located on a quiet, narrow gravel lane. When Purchis arrived at the Skutt home, it looked as if a party was going on; there were 12 vehicles parked along the lane and in the driveway, there were beer cans and glasses outside the home, and many lights were on in the home. Tim Heidenrich, an 18-year-old high school student who was doing a "ride along," told Purchis that he recognized some of the cars as belonging to fellow high school students.

Purchis testified that, when he knocked at the side door of the home, defendant Anthony Skutt answered the door. Purchis saw three men, who appeared to be over the age of 21, sitting at the kitchen table. In response to Purchis's inquiry about the 911 call, Anthony first denied that a 911 call had been made and then explained that the caller may have been his sister. Anthony told Purchis that there were only four people in the home. When Purchis asked to enter the home to determine whether everything was okay, Anthony replied that Purchis would need a warrant to enter the home.

Purchis then called his supervisor, patrol sergeant Colin Fulrath, and advised Fulrath of the situation. Fulrath told Purchis to stand by while Fulrath called the State's Attorney's office. About 10 to 15 minutes later, Fulrath arrived at the Skutt home and spoke with the State's Attorney's office. Purchis heard no yelling, screaming, thumping, or gunshots coming from the home. However, Purchis told Fulrath that he believed an emergency situation existed in the Skutt

home. Fulrath returned to his squad car and spoke with the State's Attorney's office. After the phone conversation, Fulrath told Purchis that exigent circumstances existed and that they could enter the Skutt home without a warrant.

Purchis testified that during the half-hour period from the time that Purchis first spoke with Anthony until the time Fulrath told Purchis they did not need a warrant, Anthony stayed outside the home in the vicinity of the deputies. Anthony was "very cooperative" and did not give Purchis any problems.

The deputies, now three with the arrival of deputy sheriff Turner, told Anthony that they could enter the home due to exigent circumstances. Anthony told the deputies that he understood and then escorted them into the home. Purchis testified that their purpose in entering the home was to determine whether police or medical assistance was needed. However, Purchis stated that he brought only his portable breath-testing device into the home and not his first aid kit. The deputies had no idea what type of emergency situation they might encounter. The deputies did not burst into the house because they did not want to be faced with a civil lawsuit or motion to suppress. That is why they contacted the State's Attorney's office before entering the house.

Purchis stated that three men were sitting at the kitchen table. In response to Purchis's question, the men indicated that everything was okay. Anthony escorted Fulrath around the first floor of the home while Purchis remained in the kitchen and Turner checked the basement. No female subjects were found on the first floor or in the basement. Anthony then escorted Fulrath upstairs. After about five minutes, Purchis left the kitchen to join Fulrath. Purchis stated that there were many people near a darkened bedroom. In the bedroom at least seven people were under a twin bed and under the covers of the bed. The deputies smelled alcohol on the subjects' breath. Purchis asked the subjects, who were wearing pajamas, if everything was alright. The subjects denied making a 911 call. Because no medical emergency existed and the deputies smelled alcohol on the subjects' breath, the focus of the investigation changed. Fulrath escorted the subjects downstairs and asked them again if everything was alright. After determining that there was no medical emergency, the deputies asked the subjects who was under 21 years of age. The deputies told the subjects that they could be arrested for underage drinking because of the odor of alcohol and asked the subjects to submit to breath tests. None of the subjects were placed under arrest at this time.

Fulrath testified that the deputies went to the Skutt home to determine whether anyone was injured or in need of medical assistance

due to the 911 hang-up call. Fulrath stated that he went upstairs because he had not found a female downstairs who could have been the caller. In an upstairs bedroom, Fulrath saw people in bed and others lying against the wall, all sleeping or pretending to be asleep, covered with blankets. No one responded when Fulrath shined his flashlight and asked if anyone was injured or needed help. Fulrath shook some of the subjects to wake them up. When everyone was awake, Fulrath asked them to go downstairs. Fulrath woke two others who were sleeping in another bedroom and asked them to go downstairs. Fulrath explained that he asked everyone to go downstairs so that he could determine, in better lighting, whether anybody had been injured and to find out who had made the 911 call. Fulrath noticed an odor of alcohol on a couple of the subjects.

Defendant Annette Skutt testified that she drank 1½ to 2 beers that night. Defendants Erika Young, Emily Pearson, Carrie Davenport, and Jason Koester were all sleepover guests at her home. Annette stated that when Fulrath entered the bedroom he did not ask her or her friends whether everything was alright. Fulrath just shined the flashlight in the bedroom and told everyone to get up and go downstairs.

On June 27, 2002, the trial court granted defendants' motions, holding that exigent circumstances did not exist to justify the deputy sheriff's warrantless entry into the Skutt residence. The State filed a certificate of impairment, and the cases were consolidated on appeal.

On appeal, the State argues that the trial court erred by suppressing the evidence and quashing the arrests because the warrantless and nonconsensual entrance into the Skutt home was justified by exigent circumstances.

■ As an initial matter, we note that the State bears the burden of demonstrating exigent need for a warrantless search or arrest. We will not disturb a trial court's findings of fact after a suppression hearing unless they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 430-31 (2001). However, where there are no factual disputes, we review *de novo* the trial court's decision. *Sorenson*, 196 Ill. 2d at 431.

■ The fourth amendment to the United States Constitution bars warrantless, nonconsensual searches and seizures in a person's home absent exigent circumstances. U.S. Const., amend. IV; *People v. Calderon*, 336 Ill. App. 3d 182, 196 (2002). It is well established that exigent circumstances may exist if officers reasonably believe an emergency exists mandating immediate action to aid someone in the home. *People v. Greene*, 289 Ill. App. 3d 796, 801 (1997).

In *Greene*, this court held that exigent circumstances existed where

a 911 caller hung up and only an answering machine was heard on redial. *Greene*, 289 Ill. App. 3d at 801-02. When the police arrived at the home and knocked on the door, the defendant walked to the door, dead bolted the lock, and then hid something under the sofa. *Greene*, 289 Ill. App. 3d at 803. However, the defendant later consented to the officers' entrance into his residence. *Greene*, 289 Ill. App. 3d at 803.

■ In this case, it is undisputed that Anthony Skutt refused to consent to the officers' entry into his home. Moreover, the officers' purported belief that an emergency situation existed in the home is belied by the record. In contrast to *Greene*, in this case, Anthony Skutt opened the door to Purchis and responded to his questions, stating that everything was fine and explaining that his sister probably placed the 911 call. Yet, instead of either asking or demanding to speak with Anthony's sister, the officers waited for half an hour before entering the home. This delay places doubt on the officers' testimony that they believed an emergency situation existed. In addition, Officer Purchis brought his Breathalyzer test equipment into the home, but not his first aid kit. It is difficult to reconcile this action with Purchis's stated belief that the 911 caller may have been raped or battered. Even when the officers entered the home and found people sleeping upstairs, they did not ask to speak with Anthony's sister or try to determine who made the 911 call. In light of Purchis's testimony that he believed a party was going on in the house, the beer cans in the driveway, and Heidenrich's statement to Purchis that the cars belonged to his high school classmates, the trial court's finding that the officers entered the home to investigate underage drinking and not to search for and/or give aid to a person in need is not against the manifest weight of the evidence. Thus, the trial court did not err by suppressing the evidence and arrests.

In light of our holding that the trial court properly suppressed the evidence and quashed the arrests based on the lack of exigent circumstances, we need not address the State's argument that the trial court erred by finding that no crime was committed on the premises.

The judgment of the circuit court of Jo Daviess County is affirmed.

Affirmed.

HUTCHINSON, P.J., and BOWMAN, J., concur.