James B. GORSKI, Personal Representative of the Estate of Jennifer M. Gorski, Appellant–Plaintiff,

v.

DRR, INC., d/b/a Hots Show Club, Appellee–Judgement–Defendant,

L.M.B. JR. INC. a/k/a LMB Jr., Inc. and Leonard M. Birk, Jr., Appellees–Garnishees–Defendants.

No. 49A02–0304–CV–300.

Court of Appeals of Indiana.

Dec. 24, 2003.

Rehearing Denied March 1, 2004.

C. Dennis Wegner, Jeffrey K. Orr, C. Dennis, Wegner & Assoc., P.C., Indianapolis, IN, Attorneys for Appellant.

Richard M. Malad, Eric S. Pavlack, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

James Gorski's wife was killed in a collision with an intoxicated motorist. Gorski, as personal representative of his wife's estate, filed a wrongful death complaint against a club, arguing that the club served alcohol to the motorist after the motorist was already visibly intoxicated. Prior to the trial, the owners of the club sold their interest to Leonard M. Birk, Jr., and LMB Jr., Inc. ("LMB"). Following a jury trial, judgment was entered in favor of Gorski and against the club and its original owners. Gorski filed a garnishment complaint against Birk and LMB. Birk and LMB filed a Motion to Dismiss which the trial court granted. Gorski now appeals. We reverse.

### Issue

Gorski raises two issues for our review which we consolidate and restate as whether the trial court properly granted Birk and LMB's Motion to Dismiss.

### Facts and Procedural History

On February 12, 1997, Gorski's wife Jennifer was killed in a head-on collision with a vehicle operated by Ronald Onkst. Onkst was intoxicated at the time of the collision. As personal representative of Jennifer's estate, Gorski filed a wrongful death action under the Dram Shop Act against DRR, Inc., d/b/a HOTS Show Club (the "club"). The action alleged that DRR breached its statutory and common law duty by serving alcoholic beverages to Onkst when he was visibly intoxicated. The action also alleged that the breach of duty was the proximate cause of Jennifer's death.

At the time of the accident and Jennifer's death, DRR was the sole owner of the club. DRR's stock was owned by two individuals, Ronald Solgot and Paul Oliphant, each of whom owned fifty per cent. On or about March 6, 1998, Birk entered into a contract with Solgot (the "Solgot contract") for the purchase of Solgot's shares. LMB, Birk's company, purchased Solgot's fifty per cent share of DRR stock including Solgot's fifty per cent interest in the furniture, equipment, and good name of the club.

In the Solgot contract, LMB and Birk agreed to assume responsibility and liability for all debts, liabilities, and obligations of DRR incurred on or after April 6, 1998, including the cost of defending actual or

threatened litigation. LMB also agreed to timely pay all debts and obligations of DRR and the club incurred prior to April 6, 1998. LMB began operating the club on March 6, 1998. Gorski filed the wrongful death action against DRR and the club on June 12, 1998.

On August 26, 1998, LMB and Birk entered into a contract with Oliphant (the "Oliphant contract") for the sale of Oliphant's fifty per cent interest in DRR's stock and assets. The Oliphant contract provided that LMB and Birk agreed to assume and become solely responsible for all the debts of DRR including all operational debts and expenses and all other liabilities and claims of every kind. Upon the execution of the Oliphant contract, LMB and Birk owned all the stock in DRR and all of DRR's assets.

On February 15, 2000, DRR advised Gorski that DRR's stock had been sold. DRR refused to disclose any additional information until June 15, 2000, when DRR acknowledged delivery to Gorski's counsel of stock purchase agreements between LMB and DRR.

On January 31, 2002, following a jury trial, judgment was entered against DRR in Gorski's wrongful death action. Gorski was awarded $50,000.00. DRR was administratively dissolved on February 8, 2002.

On August 13, 2002, Gorski filed a Garnishment Complaint in which he sought a garnishment against LMB and Birk for the amount of the judgment and enforcement of the judgment against the assets and income stream of the club. In his complaint, Gorski sought garnishment based on: (1) LMB's purchase of DRR's stock; (2) LMB's contractual obligation to pay all debts, claims, liabilities, and obligations of DRR; (3) Birk's express contractual guarantee of LMB's obligation to DRR; and (4) the transfer of DRR's assets

to LMB. Additionally, Gorski alleged a fraudulent transfer of assets from DRR to LMB.

Birk and LMB filed a Motion to Dismiss, alleging that the garnishment action was untimely because it was a wrongful death action and, as such, it was not brought within two years of Jennifer's death as required under the Indiana Wrongful Death Act, codified at Indiana Code section 34–23–1–1. Gorski contended in his response that his complaint was not a wrongful death action, but was a proper garnishment action based upon Birk's and LMB's contractual obligations to become responsible for the debts, liabilities, and obligations of DRR. Following a hearing, the trial court allowed Gorski to file a post-hearing brief. Gorski filed his brief on February 25, 2003, and the trial court granted Birk's and LMB's Motion to Dismiss the next day without a written opinion reciting the grounds upon which the trial court relied. This appeal ensued.

*Discussion and Decision*

### I. Standard of Review

In reviewing a motion to dismiss pursuant to a Trial Rule 12(B)(6) motion, our standard of review is well settled. A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Town of Plainfield v. Town of Avon*, 757 N.E.2d 705, 710 (Ind.Ct.App.2001), *trans. denied.* Therefore, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of this party. *Id.* In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. *Id.* The trial court's grant of a motion to dismiss is proper if it is apparent that the facts alleged in the com-

plaint are incapable of supporting relief under any set of circumstances. *Id.* Furthermore, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Id.*

■ Here, the trial court granted the motion to dismiss without a detailed written opinion. When a court grants a motion to dismiss without reciting the grounds relied upon, it must be presumed upon review that the court granted the motion to dismiss on all the grounds in the motion. *Constantine v. City–County Council of Marion County,* 267 Ind. 279, 280, 369 N.E.2d 636, 637 (1977).

## II. Motion to Dismiss

### A. LMB's and Birk's Contractual Liability

■ We believe that there is some confusion as to whether Gorski is attempting to collect from LMB and Birk because they were liable for DRR's debts or because Gorski contends they are garnishee defendants. Gorski labeled his claim as a garnishment complaint. However, Gorski would only be entitled to a garnishment against LMB and Birk if LMB and Birk still owed money to DRR. *See National Mut. Ins. Co. v. Sparks,* 647 N.E.2d 375, 376–77 (Ind.Ct.App.1995), *trans. denied* (stating that a garnishment motion must allege that the garnishee has or will have specified or unspecified nonexempt property of, or an obligation to the judgment-debtor which will be subject to execution or proceedings supplemental to execution).[1] Because Gorski has not alleged that LMB and Birk owe money to DRR,

his action cannot proceed as a garnishment complaint.

However, the important question is not the label given to an action but rather its substance. *St. Anthony Med. Ctr. v. Smith,* 592 N.E.2d 732, 736 (Ind.Ct.App. 1992), *trans. denied.* Although Gorski labeled his claim a garnishment complaint, he based his argument upon the transfer of liability from DRR to LMB and Birk through the Solgot and Oliphant contracts. Therefore, we must also examine whether LMB and Birk contracted for DRR's liability such that the trial court erred in granting LMB's and Birk's Motion to Dismiss.

■ Gorski contends that the trial court erred in granting LMB's and Birk's Motion to Dismiss because LMB and Birk contractually obligated themselves to pay the judgment obtained by Gorski against DRR. LMB and Birk contend that, assuming arguendo that LMB and Birk agreed to pay the judgment, then Gorski should have named LMB and Birk as party defendants to his wrongful death action. Gorski was aware of the sale of stock from DRR to LMB and Birk more than eighteen months before the trial and yet Gorski did not add LMB and Birk as named defendants to the action.

Gorski contends that he was not required to add LMB and Birk as defendants, relying upon Trial Rule 25(C) which states, in pertinent part:

> In case of any transfer of interest, the action may be continued by or against the original party unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

---

1. The most obvious example of this is a plaintiff bringing a suit against an employee. The plaintiff may attempt to garnish the employee's wages from the employer. However, if the employee no longer works for the employer and the employer does not owe the employee any money, there is nothing to garnish and the plaintiff cannot proceed against the employer for the judgment.

In *Sink & Edwards, Inc. v. Huber, Hunt & Nichols,* 458 N.E.2d 291 (Ind.Ct.App. 1984), this court stated:

It is not disputed that Huber was the real party in interest when it filed the third party complaint against Sink. In a case of transfer of interest subsequent to the commencement of the action, substitution of the person to whom the interest is transferred is permitted but not required and the action may be continued by or against the original party.

*Id.* at 298. For Gorski to successfully rely upon *Sink* and Trial Rule 25(C), there must have been a transfer of interest of Gorski's complaint from DRR to LMB and Birk.

A close reading of the Solgot contract reveals that Gorski's complaint was not transferred from DRR to LMB and Birk. In that document, LMB agreed to assume all responsibility and liability for all debts, liabilities, and obligations of DRR incurred on or after April 6, 1998. LMB also agreed to pay all debts and obligations of DRR incurred prior to April 6, 1998. Finally, the Solgot contract states that Birk personally guaranteed the performance and/or payment of all obligations of LMB imposed by the Solgot contract.

DRR's liability to Gorski arose on the date when it became potentially liable for Jennifer's death. That date was the date of the accident and Jennifer's death, or February 12, 1997. As such, DRR's liability to Gorski arose prior to April 6, 1998. LMB contracted for the debts, liabilities, and obligations of DRR incurred on or after April 6, 1998, but only contracted for the debts and obligations of DRR incurred before April 6, 1998. As Jennifer's death was a liability of DRR incurred before April 6, 1998, the interest in Gorski's suit did not transfer from DRR to LMB and Birk in the Solgot contract.

■ However, the Oliphant contract is not so specific. In the Oliphant contract, LMB and Birk agreed to assume all liability of DRR:

12.2 Assumption of Debt. L.M.B. Jr. Inc. Hereby agrees to assume and become solely responsible for all of the Debts of DRR, Inc. Including all amounts owe [sic] to employees, all insurance, and utility charges, all taxes of any kind including witholding [sic] and unemployment taxes, all operational debts and expenses, *and all other liabilities and claims of every kind.* L.M.B. Jr. Inc, Shall hold harmless, indemnify and defend Oliphant, and his personal representatives, estate, heirs and assigns from any and all obligations, liabilities, claims, actions, costs and expenses now owed, or which may arise in the future which in any way relates to DRR Inc. or the assets and business which is the subject of this agreement, and any and all other liabilities, obligations, debts, costs and expenses of that corporation, whatsoever. L.M.B. Jr. Inc. shall arrange for all amounts so owe [sic] to be paid in a timely manner.

Plaintiff's Exhibit 2 at 12 (emphasis added). Therefore, LMB and Birk contractually agreed to be responsible for all of DRR's claims and liabilities of every kind. By so agreeing, the interest in Gorski's suit transferred to LMB and Birk. Therefore, the trial court erred in granting LMB's and Birk's Motion to Dismiss.[2]

---

2. LMB and Birk also argue that Gorski's complaint is untimely because they characterize the complaint as a wrongful death complaint, which is governed by a two-year statute of limitations. However, as we have character-ized Gorski's complaint as a contractual liability, it is governed by a ten-year statute of limitations. *See* Ind.Code § 34–11–2–11 ("An action upon contracts in writing other than those for the payment of money ... must be

### B. Fraudulent Transfer of Assets

■ Although we have already held that the trial court erred in granting LMB's and Birk's Motion to Dismiss due to contractual liability, we also address Gorski's claim of fraudulent transfer of assets. Gorski contends that the trial court should not have granted LMB's and Birk's Motion to Dismiss because LMB and Birk did not address the fraudulent transfer of assets allegation in their motion. Gorski contends that the allegation should have been taken as true and Gorski should have been allowed to continue with his complaint.

Paragraph 29 of Gorski's Garnishment Complaint states:

> The transfer of DRR's assets to LMB was done in a fraudulent attempt to avoid DRR's liability to plaintiff, as demonstrated by the following "badges of fraud:" (i) the transfer of assets occurred shortly before and during the pendency of the underlying litigation against DRR; (ii) the transfer rendered DRR insolvent; (iii) the transfer was accomplished by a series of transactions which stripped DRR of all property available for execution; (iv) the transfer was not in the ordinary course of DRR's business; and (v) DRR did not receive a reasonably equivalent value for the transferred assets.

Appellant's Appendix at 26. The first transfer of assets from DRR to LMB and Birk occurred in the Solgot contract. LMB, Birk, and Solgot entered into their agreement more than two months before Gorski brought his action. Although Solgot may have had an idea that a suit was forthcoming, it had not yet been filed. The same cannot be said for the Oliphant contract, however. Gorski filed his wrongful death action on March 6, 1998, and LMB, Birk, and Oliphant entered into their agreement on August 26, 1998. Although this does not definitively prove that DRR transferred its assets to LMB and Birk due to Gorski's complaint, it is sufficient evidence to survive a Trial Rule 12(B)(6) challenge. Therefore, the trial court erred in granting LMB's and Birk's Motion to Dismiss on the fraudulent transfer of assets claim.

### Conclusion

LMB and Birk contractually obligated themselves to pay the judgment against DRR in the Oliphant contract. Additionally, sufficient evidence was presented regarding a fraudulent transfer of assets to survive a Trial Rule 12(B)(6) challenge. Therefore, we reverse the trial court's grant of LMB's and Birk's Motion to Dismiss.

Reversed.

NAJAM, J., and MATHIAS, J., concur.

---

commenced within ten (10) years after the cause of action accrues."). LMB, Birk, and Oliphant signed the Oliphant contract on August 26, 1998 and Gorski brought his action on August 13, 2002, within the ten-year limit. Therefore, Gorski's claim is timely.