HARMONY HEALTH PLAN OF INDIANA, INC., individually and, alternatively, in the Name of the State of Indiana on relation of Harmony Health Plan of Indiana, Inc., Appellants–Petitioners–Plaintiffs,

v.

INDIANA DEPARTMENT OF ADMINISTRATION, Carrie Henderson, In her capacity as the Commissioner of the Indiana Family and Social Services Administration, and E. Mitchell Roob, Jr., in his capacity as the Secretary of the Indiana Family and Social Services Administration, Appellees–Respondents–Defendants,

and

Anthem Insurance Companies, Inc., UI Health Plan, Inc. d/b/a Mdwise, Inc., Coordinated Care Corporation Indiana d/b/a Managed Health Services, Care Source Indiana, Inc., Molina Healthcare of Indiana, Inc., And NHP of Indiana, LLC d/b/a Welborn PLANS, Appellees–Respondents.

No. 49A02–0610–CV–846.

Court of Appeals of Indiana.

April 19, 2007.

Scott R. Alexander, Michael D. Chambers, Mildred F. Krizmanich, Sommer Barnard PC, Indianapolis, IN, Attorneys for Appellants.

Michael A. Wukmer, Fred R. Biesecker, Brian E. Bailey, Ice Miller LLP, Indianapolis, IN, Attorneys for Coordinated Care Corporation Indiana d/b/a Managed Health Services.

N. Kent Smith, Hall, Render, Killian, Heath & Lyman, Indianapolis, IN, Attorney for Mdwise, Inc.

Sally Franklin Zweig, Offer Korin, Ronald G. Sentman, Katz & Korin, Indianapolis, IN, Attorneys for Anthem Insurance Companies.

## OPINION

BAKER, Chief Judge.

Appellants-petitioners Harmony Health Plan of Indiana, Inc., et al. (collectively, Harmony) appeal from the dismissal of their petition for mandate and judicial review and a request for declaratory relief against appellees-respondents Indiana Department Of Administration (the IDOA), Indiana Family and Social Services Administration (FSSA), and various health insurance companies including Anthem Insurance Companies, Inc. (Anthem), UI Health

Plan, Inc. d/b/a Mdwise, Inc. (Mdwise), Coordinated Care Corporation Indiana d/b/a Managed Health Services (MHS), CareSource Indiana, Inc. (CareSource), Molina Healthcare of Indiana, Inc. (Molina), and NHP of Indiana LLC d/b/a Welborn Plans (Welborn) (collectively, the respondents). Specifically, Harmony argues that the trial court erred in dismissing its petition for judicial review against the respondents regarding the State's award of contracts for Hoosier Healthwise, a Medicaid Program, after it was determined that Harmony was not the successful bidder on the contracts. Concluding that the trial court properly dismissed Harmony's complaint, we affirm.

*FACTS*

In July 2006, the IDOA issued a solicitation for proposals to procure contracts with Managed Care Organizations (MCOs) to administer the Indiana Medicaid Program known as Hoosier Healthwise. The winning bidders' contracts would commence on January 1, 2007. The Hoosier Heathwise program is a mandatory managed care program that covers low-income families, children, and pregnant women. The combined value of these contracts is estimated to be $4.4 billion over a four-year period. The FSSA and the Office of Medicaid Policy and Planning (OMPP) are charged with administering these plans.

Historically, MCOs have been selected through competitive bidding, and many statutory criteria are involved in the selection. The solicitation for proposals at issue herein was known as Request For Service 6–68 (RFS 6–68), which was issued by the IDOA. Seven companies—including Harmony and the respondents—submitted bid proposals in response to RFS 6–68. As specified in the RFS, a proposal evaluation team would consider the proposals and award points on the basis of compliance with various RFS requirements.

On August 4, 2006, the State announced that Anthem and two other companies had been selected as the winning bidders, and that Harmony had not been selected. The basis for the State's decision was set forth in its recommendation of selection for RFS 6–68 that was issued on August 3, 2006. In its recommendation, the State explained its decision not to recommend Harmony by criticizing its bid application:

1. The response in the business section did not score well due to [Harmony's] financial situation and their references. The references included only two other state clients and did not reflect positively on the referenced health plans.

2. The response in the members services section lacked detail regarding coverage for newborns and coordinating care for members with special health care needs, and proposed full reliance on the AT & T Language Line for translation services.

3. The response in the information system section lacked detail in their Health Information Technology Workplan, had inaccurate information about existing health information technology networks in the State, and lacked information about their system's disaster/recovery plan.

Appellants' App. p. 108. In response, Harmony delivered a letter of protest to the IDOA on August 11, 2006. While the correspondence contained six paragraphs outlining its protests, the letter stated that Harmony reserved the right to raise additional objections after it had received and reviewed the administrative file. On August 25, 2006, Harmony sent another letter to the IDOA regarding the bidding decisions. This correspondence was eight

pages long and had approximately fifty pages of exhibits attached to it. The IDOA acknowledged Harmony's protests and indicated that it would attempt to respond by September 24, 2006.

However, Harmony filed a petition for judicial review and alternative action for mandate and request for declaratory relief against the respondents on September 1, 2006. In its petition, Harmony alleged that the "IDOA and FSSA made some critical mistakes in deciding which of the seven bidders should be awarded [the contract]." *Id.* at 74. More specifically, Harmony claimed that the IDOA improperly calculated the scoring regarding women's business enterprise participation and minority business enterprise participation. Harmony also argued that the IDOA improperly determined Harmony's Indiana economic impact score based on the number of full-time equivalent Indiana residents it currently utilized in its contract, while it scored all other bidders on the basis of the projected number of full-time equivalent Indiana residents that they would utilize if awarded a contract. In essence, Harmony's action for mandate pursuant to Indiana Code chapter 34–27–3 *et seq.* sought to direct the State agencies to correct these scoring errors. Harmony also sought judicial review of the agency's action under the Administrative Orders and Procedures Act (AOPA). Alternatively, Harmony sought relief under the Uniform Declaratory Judgment Act in accordance with Indiana Code section 34–14–1–2.

Thereafter, the respondents moved to dismiss Harmony's petition, claiming:

2. As nothing more than a disappointed bidder, Harmony does not have standing to sue the State to contest the award of a contract to another bidder.

3. [T]he [AOPA] under which Harmony requests judicial review of the State's purported "Agency Action," does not even apply to contracting decisions such as that at issue here.

4. Absent standing and a legal remedy under AOPA, Harmony fails to state a claim against the State upon which relief can be granted, and its Petition should be dismissed pursuant to Rule 12(B)(6).

5. Even if this Court were to conclude that AOPA applies in this case, Harmony has failed to exhaust its administrative remedies, and the Court lacks subject matter jurisdiction to entertain its premature challenge under AOPA.

6. Harmony has an adequate remedy at law in the form of an administrative process, making declaratory relief inappropriate in this case. The State's pending inquiry into alleged "mistakes" in the procurement process, as asserted by Harmony in its administrative protest, underscores the inappropriateness of a declaratory judgment at this early juncture.

7. Furthermore, the extraordinary remedy of an order of mandate, which Harmony demands as an alternative to judicial review, is unwarranted and untenable under the circumstances.

*Id.* at 151–52.

Following a hearing on September 25, 2006, the trial court granted the respondents' motion to dismiss with prejudice pursuant to Indiana Trial Rule 12(B)(6). The trial court determined that dismissal was proper because Harmony lacked standing to bring its claims and/or it failed to exhaust its administrative remedies. Finally, the trial court granted the motion to dismiss on the alternate theory that Harmony failed to state a claim for which

relief can be granted under any of the theories advanced in the petition.

## DISCUSSION AND DECISION

### I. Exhaustion of Administrative Remedies

Harmony contends that it properly presented claims under the mandate statute, the AOPA, and the Uniform Declaratory Judgment Act sufficient to defeat the respondents' motion to dismiss pursuant to Indiana Trial Rule 12(B)(6). However, the respondents maintain that dismissal was proper because Harmony failed to exhaust all of its administrative remedies.

 In general, a petition for judicial review may be filed only after administrative remedies are exhausted. Ind.Code § 4-21.5-5-4. Thus, resort to the judicial process must be postponed until all administrative remedies capable of rectifying the claimed error have been pursued to finality. *MHC Surgical Ctr. Assocs. v. OMPP*, 699 N.E.2d 306, 308 (Ind.Ct.App.1998). Moreover, the failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction. *M–Plan, Inc. v. Indiana Comprehensive Health Ins. Ass'n*, 809 N.E.2d 834, 837 (Ind.2004). The doctrine of exhaustion of remedies allows the agency to act without interference from the judicial branch and precludes a trial court from exercising jurisdiction over the case until the agency has acted. *MHC*, 699 N.E.2d at 308.

 By the same token, the doctrine assumes that an available statutory remedy exists at the time the challenged judicial relief is sought. *Id.* Thus, we will depart from the exhaustion of remedies requirement when compliance with the rule would be futile. *Id.*

 Here, the respondents maintain that dismissal of Harmony's petition for judicial review was appropriate because it was unreasonable for Harmony to allow the State only a few days to review the complex issues raised in its protest letter. Put another way, the respondents argue that Harmony should not have been permitted to file its action in the trial court on September 1, 2006, when it had submitted final protests to the IDOA decision only six days earlier. Moreover, the respondents claim that Harmony further burdened the State by:

1. Filing a Verified Emergency Motion For a Shorter Response Time And Immediate Hearing On September 6, 2006. CCS, App. 4; Order of Dismissal, Paragraph No. 2 (Addendum to Brief of Appellant);

2. Seeking and obtaining a hearing on various motions to dismiss on September 25, 2006. CCS, App. 4; Order of Dismissal, Paragraph No. 2 (Addendum to Brief of Appellant);

3. Verified Motion For Expedited Briefing on October 4, 2006, in the Court of Appeals. Appellate Docket; and

4. Verified Rule 56(A) Motion For Emergency Transfer, also on October 4, 2006, with the Supreme Court. Appellate Docket.

Anthem Br. p. 29.

Notwithstanding these claims, the state agencies selected the winning bidders in August 2006, and the obligations under the contracts were to commence on January 1, 2007. Given such an abbreviated time period between the close of the bidding process and the date that the contracts were to take effect, we believe it inequitable to permit the State to avoid judicial review by, perhaps, stalling any response to Harmony's contentions while executing on the very actions that were protested. Put another way, it may have been too late for Harmony to have delayed seeking judicial

review until the IDOA responded to Harmony's protests. Thus, we reject the respondents' contention that "Harmony's own actions [have] delayed the State's resolution of the projects by diverting the State's resources." *Id.* In sum, requiring Harmony to seek agency review in this matter would have been a futile gesture. Thus, Harmony was not required to exhaust its administrative remedies before seeking judicial review. As a result, we conclude that the trial court erred in dismissing Harmony's petition for judicial review on this basis.

## II. Failure to State a Claim

### A. Standard of Review

 Notwithstanding our determination that the trial court erred in dismissing the complaint and thus properly acquired jurisdiction over this matter, it must still be shown that Harmony has presented viable claims against the respondents sufficient to withstand a motion to dismiss under Trial Rule 12(B)(6). That said, our review of the grant of a motion to dismiss under Trial Rule 12(B)(6) is de novo. *Wilhoite v. Melvin Simon & Assocs., Inc.,* 640 N.E.2d 382, 384 (Ind.Ct.App.1994). A motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Gorski v. DRR, Inc.,* 801 N.E.2d 642, 644 (Ind.Ct.App.2003). Therefore, we review the complaint in a light most favorable to the non-moving party, drawing every reasonable inference in favor of that party. *Id.* The trial court's grant of a motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* at 644–45. In determining whether any facts will support the claim, we look only to the complaint and not to any other evidence in the record. *Id.* at 645.

### B. Action for Mandate

Harmony maintains that it sufficiently stated a claim for mandate against the respondents. Specifically, Harmony argues that its right to bring such an action arises from a personal stake in the outcome of the litigation because it would suffer a direct injury if the IDOA was permitted to award the contracts to the other companies.

 We initially observe that an action for mandate is an "extraordinary equitable remedy." *Lake County v. State ex rel. Manich,* 631 N.E.2d 529, 534 (Ind.Ct.App.1994). Such an action will "lie to force an official to perform a clear legal duty or to grant an unquestioned right to relief. However, an action for mandate cannot be employed to adjudicate and establish a right or to define and impose a duty." *State ex rel. Drost v. Newton Sup. Court,* 275 Ind. 297, 416 N.E.2d 1247, 1250 (1981). Mandamus is not proper unless a party has a clear and unquestioned right to relief and the respondent has failed to perform a clear, absolute, and imperative duty imposed by law. *Nass v. State ex rel. Unity Team,* 718 N.E.2d 757, 766 (Ind.Ct.App.1999). Put another way, mandate orders will not be granted to control the discretionary action of a public officer, board, or commission. *Brant v. Custom Design Constructors Corp.,* 677 N.E.2d 92, 100 (Ind.Ct.App.1997). Where an agency is vested with discretionary power to enter into public contracts pursuant to competitive bidding, an honest exercise of that discretion will not be disturbed by the courts. *Irwin R. Evens & Son, Inc. v. Bd. of Indianapolis Airport Auth.,* 584 N.E.2d 576, 584 (Ind.Ct.App.1992).

 In this case, Harmony acknowledged that its proposal was intended as a response to RFS 6–68 and demanded that the IDOA "properly score" its propos-

al so that it would receive a service contract. Appellants' App. p. 76–77, 81–83. That said, Indiana Code section 5–22–6–1 grants an agency absolute discretion to develop and use "any procedure" it "considers appropriate" in purchasing services. In essence, the statute affords the State broad discretion to determine the best contractor for the job. Moreover, an agency is not required to adopt rules for purchasing services. Indeed, Indiana Code section 5–22–6–2 provides that an agency "may adopt" such rules and "may establish" various policies for the purchase of services. When a party submits a proposal to perform personal services, it has "no legal right to have its bid ... even considered." *Trans–Care, Inc. v. Bd. of Comm'rs of the County of Vermillion*, 831 N.E.2d 1255, 1259 (Ind.Ct.App.2005).

Although not entirely clear, it appears that Harmony is claiming that it is entitled to an order of mandate because the IDOA failed to accurately score various criteria in its bid and that such errors constituted a failure of the State to comply with its own criteria that were set forth in RFS 6–68. In support of its position, Harmony directs us to *Sperry Rubber & Plastics v. Review Bd. of Ind. Employment Sec. Div.*, 139 Ind.App. 503, 216 N.E.2d 530, 531–32 (1996). In *Sperry*, the issue before this court was whether an employee/claimant had properly appealed an adverse decision because her attorney had initiated the appeal by a letter rather than using "the required form 651 under the rules and regulations of the Indiana Employment Security Board." *Id.* at 530. The regulation at issue in *Sperry* provided that "[a]ll pleadings, reports, and papers filed in connection with disputed claims must be on forms prescribed and furnished by the Division," and was mandatory because it had been formally adopted pursuant to a specific statute authorizing the Employment Security Board to adopt rules and regula-

tions. *Id.* In determining that the Review Board could not suspend the operation of a general rule in favor of the petitioner, this court relied on *Coleman v. City of Gary*, 220 Ind. 446, 448, 44 N.E.2d 101, 107 (1942), where it was held that a "rule adopted by the commission under the authority of the 1939 act, had the force and effect of law so long as it was in force."

Indeed, *Sperry* involved a state agency that was exercising its sovereign power to govern rather than its propriety power of doing business as the IDOA did in this case when RFS 6–68 was issued. Further, *Sperry* involved statutorily promulgated rules and procedures that had the binding force of law. In contrast, Harmony's petition does not plead any facts upon which a court could find that RFS 6–68 was adopted in accordance with any particular statute. The bidding criteria at issue in this case are not "rules and procedures" adopted through the formal process of the AOPA. Rather, the criteria contained in RFS–68 afford the State a wide degree of discretion to evaluate proposals received from managed care services. Harmony's petition merely alleged that RFS 6–68 was in a class of "invitations for competitive bidding, including the RFS." Appellants' App. p. 77. Therefore, nothing in Harmony's petition pleads any fact supporting the existence of a duty under statute, rule or regulation compelling the State to score the bid proposals received in any particular manner or to perform any other specific action.

The other cases cited by Harmony address administrative rules and regulations promulgated by a state agency rather than the discretionary criteria formulated for purposes of competitive bidding. Indeed, RFS 6–68 authorizes the state to evaluate factors other than the criteria of Minority and Women's Business Enterprises and Indiana Economic Impact that are at issue

in this case, and Harmony admits that the State had "the discretion to establish the parameters by which to evaluate competitive bids" and "to select the best parties with which to contract." Appellants' Br. p. 11.

In sum, Harmony is requesting that we overturn the State's contracting decisions and replace them with its own business desires. Such a ruling is beyond the province and jurisdiction of the courts. In essence, the mandate that Harmony requests would only serve to substitute a court's judgment for discretion that can be exercised by the State. As a result, Harmony has failed to state a claim upon which the trial court could have properly issued a writ of mandate requiring the State to grant the relief sought in the petition. Thus, the trial court properly determined that Harmony failed to state a claim for which relief could be granted with regard to the request for mandate.

## C. Claim Under the AOPA

 Notwithstanding our determination that a writ of mandate could not be issued in these circumstances, Harmony further contends that the trial court's dismissal of the petition for judicial review was improper because Harmony qualified as an "aggrieved person" in accordance with Indiana Code section 4–21.5–5–3[1] of the AOPA. Therefore, Harmony argues that its claims against the respondents properly fell within the purview of the AOPA and its petition should not have been dismissed.

 An aggrieved party must have a legally protected interest, such as personal or property rights, to seek judicial review or declaratory relief. *Lake County Plan Comm'n v. County Council of Lake County,* 706 N.E.2d 601, 602–03 (Ind.Ct. App.1999). To have a property interest in a benefit, a person must have a legitimate claim of entitlement to it that is derived from statute, legal rule, or mutually explicit understanding. *All–Star Const. and Excavating Inc. v. Bd. of Pub. Works,* 640 N.E.2d 369, 371 (Ind.1994).

 It is undisputed that the contract in this case is one for services—the administration of managed health care benefits for Indiana residents who are eligible for Medicaid. This court recognized in *Trans–Care, Inc.* that when a contested contract is for personal services, it is not governed by the strict bidding procedures contained in the public purchasing laws. *Trans–Care Inc.,* 831 N.E.2d at 1259. Indeed, Indiana Code section 5–22–6–1 provides that "[t]he purchasing agency of a governmental body may purchase *services* using any procedure the governmental body or the purchasing agency of the governmental body considers appropriate." (Emphasis added). Moreover, "the State enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." *Lambert v. State,* 468 N.E.2d 1384, 1387 (Ind.Ct.App.1984).

As noted above, Indiana administers its Medicaid program through the use of services from MCOs. Appellants' App. p. 74–76. And RFS 6–68 was a request for services by MCOs with regard to Hoosier Healthwise, Indiana's Medicaid program. *Id.* at 74. Hence, the State had authority to exercise its discretion under the public purchasing statutes to decide who would receive contracts to provide services under RFS 6–68. Inasmuch as Harmony—a disappointed bidder—was not harmed when it

---

1. The term "aggrieved persons" comprises all persons: (1) to whom the agency action is specifically directed; (2) who were parties to the underlying procurement proceedings; and (3) who were adversely affected by the agency action.

was not selected, it lacked standing as an "aggrieved party" under the AOPA to challenge the award of the bid in this instance. *See City of Fort Wayne v. Pierce Mfg., Inc.,* 853 N.E.2d 508, 515 (Ind.Ct.App.2006) (observing that losing bidders for a governmental contract generally have no more standing to challenge the validity of the contract eventually awarded than a random member of the public), *trans. denied.*

Moreover, we note that the AOPA specifically exempts agency decisions that relate to the award of contracts for goods and services in circumstances such as these. In pertinent part, Indiana Code section 4–21.5–2–5(11) provides that "This article does not apply to any of the following agency actions: . . . (11) the acquisitions, leasing, or disposition of property or procurement of goods or services by contract." Again, we note that the contract at issue was for the acquisition of health services for Medicaid-eligible Indiana citizens. As a result, the trial court properly determined that its action seeking relief under the AOPA did not apply in these circumstances, and the dismissal of the petition in accordance with Trial Rule 12(B)(6) was proper on these grounds.

### D. Declaratory Relief

■ Finally, Harmony argues that the trial court erred in dismissing the petition for judicial review because the facts alleged in the petition entitled it to declaratory relief. Specifically, Harmony maintains that the provisions of the Uniform Declaratory Judgment Act, Indiana Code section 34–14–1–2, support its claims for relief.

In resolving this issue, we note that Indiana Code section 34–14–1–2 provides that

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinances, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

In construing the above, this court has held that "the declaratory judgment statute was intended to furnish an adequate and complete remedy where none before had existed. It should not be used where there is no necessity for such a judgment." *Madden v. Houck,* 403 N.E.2d 1133, 1135 (Ind.Ct.App.1980).

In examining Harmony's requests for relief, it is apparent that nothing in its petition asserted that it had established rights under a "deed," "will," "written contract," or otherwise. As noted above, Harmony has failed to state a claim under either the mandate statute or the AOPA. Moreover, we note that Indiana Code section 4–13–1–19 and Indiana Code section 5–22–3–6 provide that a bidder for a State contract has no property rights until the contract is awarded and fully executed. Therefore, Harmony's requests that the trial court order the State either to "include Harmony as a successful . . . bidder" or to "recalculate the bid proposals," appellants' app. p. 83, demonstrate that Harmony is, in actuality, requesting the court to determine what Harmony's rights are, rather than to enforce a "clear legal duty" that already exists. For these reasons, Harmony's request for relief under the declaratory judgment statute fails.

The judgment of the trial court is affirmed.

DARDEN, J., and ROBB, J., concur.