**HAMRICK'S DIESEL SERVICE & TRAILER REPAIR, LLC,**
Appellant–Plaintiff,

v.

**CITY OF EVANSVILLE, by and through its BOARD OF PUBLIC WORKS, Appellee–Defendant.**

No. 82A01–1003–PL–109.

Court of Appeals of Indiana.

Oct. 21, 2010.

Leslie C. Shively, Shively & Associates, P.C., Evansville, IN, Attorney for Appellant.

R. Thomas Bodkin, Chad Michael Smith, Bamberger, Foreman, Oswald & Hahn, LLP, Evansville, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Hamrick's Diesel Service & Trailer Repair, LLC ("Hamrick") appeals the trial court's order granting summary judgment to the City of Evansville ("the City") and dismissing Hamrick's case.

We affirm.

### Issue

Hamrick raises a single issue on appeal, which we restate as whether the trial court erred as a matter of law when it determined that the City "acted properly and within the bounds of Indiana's public bid laws" in awarding the City's towing contract to another bidder. The issue we address, which is dispositive of the case, is whether Hamrick has a cause of action against the City under the State's public purchasing laws.

### Facts and Procedural History[1]

Hamrick provided services for the towing of nuisance vehicles, wrecks, and impounded vehicles for both the City and Vanderburgh County ("the County") from 2003 through 2008. The City of Evansville–Vanderburgh County Purchasing Department ("City–County Purchasing Department") announced that it would accept sealed bids, due December 3, 2008, for those services for the period from January 1, 2009 to December 31, 2011. Fees for towing under these contracts would be assessed against the owners of the towed vehicles. Hamrick submitted a bid. Tri–State Towing, Inc., ("Tri–State") submitted the only other competing bid.

The bid announcement used language from a municipal public works purchasing statute indicating that the City and County would, separately, select the "lowest responsible and responsive bidder." App. 82. Bidders were required to submit documents demonstrating that each was properly licensed to perform the towing work required and that each bidder's vehicles were properly registered with the State. The announcement also stated that the City and County reserved the right to reject any bidder and to select the winning bidder in the best interests of its citizens.

Hamrick met all the requirements specified in the bid announcement upon submitting its bid; Tri–State did not. The County selected Hamrick; the City selected Tri–State. Hamrick sued the City for damages, claiming that the City's use of the language from the public works purchasing statute bound the City to select

1. We heard oral argument on this case on September 28, 2010, at Vincennes University in Vincennes, Indiana. We extend our thanks to Vincennes University for its hospitality, and thank counsel for coming to Vincennes and for their able advocacy.

only a bidder meeting all the requirements announced in the bid announcement.[2]

The trial court granted summary judgment to the City. This appeal followed.

### Discussion and Decision

*Whether Hamrick has a Cause of Action under Public Purchasing Laws*

■ Hamrick contends that, because the City acted counter to the terms of its bid announcement in awarding the towing contract to Tri–State, the City violated the Public Works Purchasing Act and Hamrick is therefore entitled to damages. While somewhat novel in its approach, we cannot accept Hamrick's argument because Hamrick, having no contract with the City, lacks standing to bring this suit.

Hamrick asks that we reverse the trial court and grant summary judgment on the ground that the City acted counter to the procedures to which it bound itself in its bid announcement, and points us to the bid announcement's use of the phrase "lowest responsive and responsible bidder" from the Public Works Purchasing Statute. Ind.Code § 36–1–12–4(b)(8)(A). Hamrick argues that the City's adoption of this language binds the City to observe all the formalities of the statute, and thus the City violated the statute by selecting Tri–State when Hamrick was the only "responsive and responsible bidder" and is subject to an action for damages for breach of contract.

■ Both Hamrick and the City agree that the towing contract is a contract for services and that the statutes governing how public bodies bid and enter into service contracts, set forth in Indiana Code Chapter 5–22–6, apply. Government bodies may use any procedures they deem "appropriate" when contracting for services and "may adopt rules" and "establish policies" to that end. I.C. § 5–22–6–1 & –2. Given the broad discretion afforded to it by the statute, the City was free to disregard the criteria it set forth in the bid announcement when assessing the bids for the towing contract. This is underscored by the existence of the City's reservation of rights, which permitted it to make any changes to its criteria and to make its decision in the best interests of the City in its consideration of submitted bids.

In *Harmony Health Plan of Ind., Inc. v. Ind. Dep't of Admin.*, this court was confronted with the question of whether a government agency could be bound to follow its originally specified bidding criteria in awarding a contract for services. 864 N.E.2d 1083 (Ind.Ct.App.2007). In that case, Harmony sought judicial review and an order of mandate when the State rejected its bid to administer the Hoosier Healthwise Program. *Id.* at 1085–86. Harmony alleged that the State had incorrectly scored Harmony's bid and that the State's failure "to comply with its own criteria" harmed Harmony by depriving it of a properly-awarded contract. *Id.* at 1090. We rejected Harmony's claim, noting that the State had "absolute discretion" in choosing which service providers would be awarded contracts to administer Hoosier Healthwise. *Id.* We also noted

---

**2.** At oral argument, Hamrick asserted that its submission of a bid constituted acceptance of an offer to contract from the City subject to the condition that Hamrick's bid met all conditions listed in the bid announcement. The Proposal Form the City–County Purchasing Department required all bidders to complete includes the language "The undersigned [bidder] *proposes to furnish and deliver* ... towing services." (App. 91; emphasis added.) The bid announcement and required forms thus make it plain that a bid would not constitute acceptance of an offer to contract, but rather would constitute an offer which the City "reserve[d] the right to reject." (App. 82.) Hamrick's bid was not acceptance of an offer, but an offer which the City could accept or reject, and thus no contract arose.

that the State would be free to reject any bid and that Harmony lacked any right to have its bid considered at all. *Id.* at 1090 (citing *Trans–Care, Inc. v. Bd. of Comm'rs of the County of Vermillion,* 831 N.E.2d 1255, 1259 (Ind.Ct.App.2005)). We therefore declined Harmony's request that we "overturn the State's contracting decision and replace them with its own business desires." *Id.* at 1091.

Hamrick distinguishes its situation from the facts in *Harmony* by noting that it seeks monetary damages where Harmony sought equitable relief. This fact does not change the outcome of this case for several reasons. First, Indiana Code 5–22–6 does not distinguish between questions of money damages versus equitable relief for disappointed bidders. Second, as we noted in *Harmony,* we cannot substitute our business judgment for that of the City, which had the discretion to change its evaluation criteria, waive any formalities with which a bidder failed to comply, or decide not to accept any bids at all. *Cf. Harmony,* 864 N.E.2d at 1090–91.

Finally, just as Harmony had no right to have its bid considered by the State, neither did Hamrick have the right to have its bid considered by the City. Harmony had no standing to seek mandate because it had no right to have its bid considered. *Id.* at 1090. Since Hamrick had no right to have its bid considered it cannot sustain a legal claim to have been deprived of a contractual right for which it is entitled to damages from the City. Hamrick's argument that the City's use of the "responsive and responsible bidder" language binds the City to another set of statutory procedures is thus of no avail. Hamrick provides no authority to support its proposition, nor can we find any. The level of discretion afforded the City in entering into service contracts thus prevents the City from being bound by the use of the "responsive and responsible" language.

Simply put, under Chapter 5–22–6, government bodies are afforded nearly absolute discretion in purchasing services. Yet even if that discretion were somehow curtailed, Hamrick lacks a cause of action to seek damages, as decisions from this court and the Indiana Supreme Court make clear.

In *Shook Heavy and Environmental Const. Group v. City of Kokomo,* our supreme court addressed a certified question from the United States District Court for the Southern District of Indiana on whether an unsuccessful bidder for a service contract could seek equitable relief against a government unit. 632 N.E.2d 355 (Ind. 1994). The court determined that "an unsuccessful bidder has no cause of action under the Public Lawsuit Statute unless that bidder is a citizen or taxpayer of the municipality," *id.* at 360, or unless there has been "collusion or fraud" between the government body and the successful bidder. *Id.* at 358–59. Because Shook could demonstrate none of these, it was not entitled to seek equitable relief. Continuing its analysis, the court found a "strong inference that the legislature specifically intends that there be no cause of action," including an action at common law, for an unsuccessful bidder for a service contract. *Id.* at 359. Thus, where a service contract is at issue there is no statutory cause of action for a party who is merely a disappointed bidder, and no equitable relief at common law.

This court's decisions have been similarly reluctant to find a cause of action for disappointed bidders. Our decision in *Harmony, supra,* was founded on *Shook* and *Trans–Care.* In *Trans–Care,* a disappointed bidder on ambulance services sought to void a winning bidder's contract. After the winning bidder asked to be re-

leased from its contract, the contract was re-bid. Trans–Care again lost to another bidder and amended its complaint to invalidate the new contract. *Trans–Care*, 831 N.E.2d at 1257.

In Trans–Care's appeal from an adverse entry of summary judgment, we held that because Trans–Care sought to invalidate a contract for services, its claim to standing was even weaker than the losing parties in *Shook* and a number of other cases where the Public Purchasing or Public Works laws were at issue. *Id.* at 1259. Noting that losing bidders on government contracts are no different from losing bidders on private contracts—that is, "stranger[s] to the contract eventually awarded," losing bidders have no standing to challenge the validity of the contract awarded by a government entity outside of those actions specifically set forth by the legislature. *Id.* at 1260. We then quoted *Shook*, noting that "[i]n the absence of a violation of [Section] 24–1–2–3,[3] the bidder has nothing more than a unilateral expectation or abstract desire,' " but no cause of action for losing the bid. *Id.* at 1261 (quoting *Shook*, 632 N.E.2d at 360 n. 7).

Here, Hamrick acknowledges that it was not the winning bidder. While Hamrick and the City agree that the City deviated from its announced bid criteria, Indiana Code Chapter 5–22–6 and existing case law makes it clear that the legislature intended that there be no cause of action except for certain limited situations specified by statute. Because Hamrick does not seek injunctive relief and claim taxpayer status to challenge the City's actions under Indiana Code Section 36–1–12–4, and does not allege collusion or fraud under the Indiana Antitrust Act at Indiana Code Section 24–1–2–3, we find no cause of action under which Hamrick may pursue its claim. Nor, given the discretion afforded by stat-

ute and prior case law, can we accept Hamrick's argument that use of the phrase "lowest responsible and responsive bidder" in the bid announcement in any way binds the City to the full statutory scheme of the Public Works Purchasing Act.

### The Effect of Tri–State's Nonconformance with Bid Specifications

■ Hamrick's argument relies on our decision in *The Matter of Associated Sign & Post, Inc.*, for the proposition that a bid on a public contract that materially varies from the bid announcement's specifications must be disqualified and may not be amended. 485 N.E.2d 917, 924 (Ind.Ct. App.1985) (citations omitted). Such a bid cannot, as a matter of law, be accepted by the governmental body soliciting the bids because doing so "affords one bidder a substantial advantage not available to other bidders" and thereby "destroys the competitive character of the bidding process." *Id.*

We decline Hamrick's invitation to accept its interpretation of the requirements for the bidding process for two reasons. First, Hamrick asserts that because Tri–State's vehicles had not been registered with the State of Indiana before Tri–State submitted its bid, and because proper licensing with the State was a requirement for a proper bid, Tri–State's bid materially varied from the bid announcement. See *id.* (stating that "a material variance requires" rejection of a bid). While most of Tri–State's towing vehicles were not registered in Indiana when Tri–State submitted its bid, we note that the bid announcement reserved the City's "right ... to waive any informality [sic] in any bid." (App. 82.) We also note that Tri–State registered its vehicles in Indiana before its contract with the City took effect. Given the City's reservation of rights and Tri–State's com-

---

**3.** Ind.Code § 24–1–2–3 is the Indiana Antitrust Act.

pliance with the registration requirements before the contract took effect, we cannot agree with Hamrick that the City was legally precluded from accepting Tri–State's bid.

Second, *Associated Sign* addresses public purchasing laws no longer in effect, *see* I.C. § 36–1–9–3 (1981 Supp.1993) (repealed by P.L. 49–1997, effective July 1, 1998), and which, in any event, focused on the purchase of "materials," not services. I.C. § 36–1–9–1(a) (1981 Supp.1993). The comparable present statute that replaced Indiana Code Chapter 36–1–9 is Indiana Code Chapter 5–22–7, and it largely resembles its predecessor statute. *See* I.C. § 5–22–7–1 (stating "[a] purchasing agent shall follow the procedure described in this chapter in awarding a contract for supplies"); I.C. § 5–22–7–8 (requiring selection and notice "to the lowest responsible and responsive bidder"). Thus, while the logic of *Associated Sign* may yet apply to applicable public purchases (indeed, many of its statements of law are mirrored in the present statutes), it does not clearly apply in this case, which concerns a contract for services.

## Conclusion

Because Hamrick seeks relief arising from a lost bid on a contract for services, the discretion afforded to government bodies to select vendors for such contracts and Hamrick's failure to claim either taxpayer status or some form of collusion preclude any cause of action under which Hamrick might seek relief. Nor can Hamrick argue under the Public Purchasing Law and *Associated Sign & Post* that the City's award of the contract to Tri–State was otherwise unlawful. We therefore affirm the trial court's grant of the City's motion for summary judgment.

Affirmed.

NAJAM, J., and ROBB, J., concur.